# 𝕽ichmond.

## BOGGS ET ALS. V. THE COMMONWEALTH.

### November 23, 1882.

#### (*Seven Cases.*)

1. LEGISLATURE—*Fisheries and oyster-beds.*—Where not restricted by the United States constitution, a State is entitled to legislate over her public property and regulate its use, especially fisheries and oyster-beds within her limits; the same being the common property of her citizens, never ceded to the United States.

2. IDEM—*Forfeiture of vessels, &c.*—A State is also entitled to exact the forfeiture of vessels employed in violating her oyster laws, though the owner be not implicated in the offence, and the vessels so employed without his consent or knowledge.

3. IDEM—*Idem—Construction of statutes.*—In passing the act of 6th March, 1880 (Acts, 1879-80, p. 197), the object of the legislature was to forfeit vessels employed in violating the oyster laws; but that act contains no provision for any process against the vessels, and none whereby the owner may appear and controvert the claim of the Commonwealth. And so far as it attempts the confiscation of the property of persons not convicted of the offence, that act is void.

4. IDEM—*Acts of confiscation.*—Forfeitures of rights and property cannot be adjudged by the legislative act, and confiscation without a judicial hearing after due notice, would be void as not being by due process of law. *McVeigh* v. *United States*, 11 Wallace, 267.

5. JURISDICTION—*Petition.*—So long as the proceeds of confiscated property paid into court, remain under its control, anyone entitled to the money may apply therefor to the court by petition.

Error and *supersedeas* to judgments of circuit court of Matthews county, confirming judgments of county court of said county dismissing petitions filed in the county court by Joseph C. Boggs and William F. Waters, David R. Mis-

ter, Thomas R. Chandler, Thomas Johnson, Henry F. Powell, John R. L. Hopkins and William H. A. Hopkins, and O. E. Maltby in certain cases pending therein, and known as the "Oyster cases."

Boggs and Waters owned the schooner "*Mary Tauline.*" They sold this vessel to E. O. Kellam for $850, for which he executed his bond. The title to her was withheld until the whole of the purchase money should be paid, and she remained enrolled in their names as owners at the port of Onancock, in Accomac county, Virginia. Without the knowledge or consent of Boggs and Waters, Kellam employed this vessel in violating the oyster laws of this State, by taking oysters with *dredges* in the waters of Chesapeake bay, opposite Gwyn's island, in said county; and whilst so employed, Sands Smith, sheriff of said county, arrested Kellam and seized the vessel.

In March, 1882, Kellam and the six other appellants were in said county court indicted for felony, under the act passed 6th March, 1880 (see Acts 1879–'80, p. 197), and plead guilty, and were sentenced to the penitentiary for one year.

Afterwards, on 20th March, 1882, without any evidence that the vessel had been illegally employed, the county court ordered this vessel to be sold as forfeited to the Commonwealth. When Boggs and Waters heard of the order of sale, having had no opportunity to assert their rights of property in the vessel, they filed their petition and tendered evidence to prove the facts therein set forth, but the county court ordered the dismission thereof, to which judgment they excepted.

They next applied to and obtained from the Honorable Benjamin W. Lacy, judge of the circuit court of said county, a writ of error and supersedeas to said judgment.

On the 17th June, 1882, the circuit court affirmed the judgment, and retaining the cause, ordered the said sheriff within ten days from the rising of the court to sell the

said vessel and deposit the proceeds of the sale in the
Planters National Bank of Richmond, Virginia.  To this
judgment of the circuit court, Boggs and Waters obtained
a writ of error and *supersedeas* from one of the judges of this
court.  As a part of the history of this case it may be
added that in making the arrest of these and other persons
found actually engaged in violating the oyster law, and in
seizing their fleet of vessels employed in dredging, the
sheriff was acting under the immediate command of Wil-
liam E. Cameron, governor of the Commonwealth, then
present with a small detachment of volunteer militia, in
order to insure the enforcement of an important act, the
efficient enforcement whereof, being attended with serious
difficulties, had been neglected.

*J. B. Donovan, Ro. McCandlish, John Neely* and *R. M. Hughes,*
for the appellants.

*Attorney-General F. S. Blair,* for the Commonwealth.

STAPLES, J., delivered the opinion of the court.

Indictments were found in the county court of Matthews
against certain parties for unlawfully and feloniously
catching and taking oysters with dredges and for employ-
ing certain vessels in the commission of these offences.
The accused were convicted and sentenced to confinement
in the penitentiary.  At a subsequent term of the court an
order was entered for the sale of the vessels, which, it was
alleged, were forfeited to the Commonwealth.

At the same term the appellants filed their petitions
severally, in which they stated they were the owners of
the vessels so ordered to be sold, or had liens thereon by
way of mortgage ; that they were not implicated in the
offences charge in the indictments, nor had they any know-

ledge of such offences, and they asked to be allowed an opportunity of showing these facts, and that an order might be entered for the restoration of their property.

The county court denied the hearing, and directed the petitions severally to be dismissed.

Appeals were taken to the circuit court of Matthews, which affirmed the judgments of the county court, and from these latter judgments the cases were brought to this court by writs of error and supersedeas.

In the arguments here by the counsel for the petitioners, various objections were raised to the proceedings in the lower courts, the most material of which will be noticed in the course of this opinion. The cases turn upon the proper construction of an act of the legislature passed March 6th, 1880, which is as follows: "If any person shall take or catch oysters with dredges or instruments other than ordinary oyster tongs within the waters of this State, he shall be deemed guilty of a felony, and upon conviction shall be confined in the penitentiary not less than one nor more than three years, and shall forfeit to the Commonwealth the vessel or boat so employed, which shall be sold at public action by the sheriff within ten days after said conviction," &c.

The first point made by the petitioners is, that this section just quoted does not authorize the forfeiture of the vessel unless it be the property of the person charged with and convicted of the commission of the offence. It must be conceded there is very great force in this objection, and that the language of the act is not free from difficulty or obscurity. I am inclined to think, however, upon comparing this act with others bearing upon the same subject, that the object of the legislature was to forfeit the vessel employed in the commission of the offence without regard to the title—the person in charge of the vessel being upon conviction treated as the owner. The point is, however,

not very material in view of other and more important questions presented for our consideration.

The first of these is, whether the legislature has the power to exact the forfeiture of a vessel employed in violating the oyster laws of the State, notwithstanding the owner may not be implicated in the offence, and the vessel may be so employed without his knowledge or consent.

That the legislature has such power would seem to be clear—both upon reason and upon authority. The cases upon this point are numerous and decisive. It will be necessary to refer only to a few of them.

In the case of the *United States* v. *The Brig Malek Adhel,* 2 Howard, 233, it was held that under the act of congress of March 3, 1819, any piratical aggression subjects the vessel to forfeiture, although the owners are entirely innocent, and the vessel was armed for a lawful purpose and sailed on a lawful voyage. Mr. Justice Story, in delivering the opinion of the court, said : " The next question is, whether the innocence of the owners can withdraw the ship from the penalty of confiscation under the act of congress. The act makes no exception whatsoever, whether the aggression be with or without the co-operation of the owners. The vessel which commits the aggression is treated as the offender, as the guilty instrument or thing to which the forfeiture attaches, without any reference whatsoever to the character or conduct of the owner. This is done from the necessity of the case, as the only adequate means of suppressing the offence or of insuring indemnity to the injured party."

The doctrine is frequently applied to cases of smuggling and other misconduct under our revenue laws, and it has been applied to kindred cases, such as cases arising on embargo and non-intercourse acts. In short, the acts of the master and the crew in cases of that sort bind the interests of the owner of the ship, whether he be innocent or guilty;

and he impliedly submits to whatever the law demands, and a forfeiture attaches to the ship by reason of their unlawful or wanton wrongs.

The same doctrine was laid down by Chief-Justice Marshall in the *United States* v. *The Schooner Little Charles*, 1 Brock R. 347, 354, a case arising under the embargo laws.

The learned judge said : "This is not a proceeding against the owner. It is a proceeding against the vessel for an offence committed by the vessel, which is not less an offence, and does not the less subject her to forfeiture, because it was committed without the authority and against the will of the owner." In *Dobbins' Distillery* v. *United States*, 6 Otto, the whole subject of forfeiture for a violation of the revenue laws of the United States is fully considered by Mr. Justice Clifford, and the authorities reviewed by him. In that case the proceeding was by information *in rem* for the confiscation of a distillery and other property connected with it in the possession of a lessee. Defence was made by the owner, who denied that he was implicated in the frauds of the operator of the distillery, or that he had any notice of them. It was held that the unlawful acts of the distiller bind the owner of the property in respect to the management of the same as much as if they were committed by the owner himself. Power to that effect the law vests in him, and if he abuses his trust, it is a matter to be settled between him and the lessee, but the acts of violation, as to the penal consequences to the property, are to be considered just the same as if they were acts of the owner. See also *United States* v. *Seven Barrels of Distilled Oil*, 6 Blatchford, 174.

It is very true that these decisions are based upon acts of congress. It is well settled, however, that the right of the State governments to legislate in such manner as in their wisdom may seem best over the public property of the State, and to regulate the use of the same where not re-

stricted by the constitution of the United States, is as complete and unlimited as that of the Federal government in matters affecting the general welfare. And this is especially true with respect to the fisheries and oyster beds within the territorial limits of the State, which are the common property of the citizens of the State, and were never ceded to the United States. In the case of *McCready* v. *Virginia*, 27 Gratt., this court held that an act of the legislature prohibiting non-residents, under penalty of fine and forfeiture of the vessel employed, from taking or catching or planting oysters in her waters, was not in conflict with the constitution of the United States, or of the rights of citizens of other States. And this decision, upon appeal to the supreme court of the United States, was unanimously affirmed.

An express authority upon this point may, however, be found in the case of *Smith* v. *State of Maryland*, 18 How. R. 71. It was there held that a State has the right to protect its fisheries by making it unlawful to take or catch oysters with a scoop or dredges, and to inflict the penalty of forfeiture upon the vessel employed in the pursuit, although it may be enrolled and licensed under the laws of the United States. It is competent for the State, says Mr. Justice Story, to inflict a forfeiture of the vessel on account of the misconduct of those on board; treating the thing as liable to forfeiture because the existence of the offence is within the established principles of legislation which have been applied by most civilized nations. These authorities, it seems to me, are decisive of the question. The cases of *Fisher* v. *McGirr*, 1 Gray, page 1, and *Com.* v. *Intoxicating Liquors*, 107 Massachusetts, 396, are to the same effect.

In the last named case, it was held that intoxicating liquors kept for sale in Massachusetts in violation of an act of the legislature, may be seized and forfeited, although so kept in fraud of the owner, who was entirely ignorant

of the illegal purpose of the bailee; that the liquor is the guilty instrument or thing to which the forfeiture attaches, and this is done from the necessity of the case.

The theory of the law in all this class of cases is, that the vessel or other property is unlawfully used by the owner himself, or by some other person with whom he has intrusted it; that it is so used in violation of law, and to the detriment of public and private interests, which can only be effectually protected by confiscating the property itself as the offender. And this is more especially true with reference to the fisheries and oyster beds of Virginia, which have been invaded and plundered time and time again by piratical vessels, fitted out in other States and manned by ignorant and irrepressible crews, whose punishment affords but little redress to the State or compensation to the citizens.

For these reasons, I think there is no doubt of the constitutional power of the legislature to pass laws for the forfeiture of any vessel employed in violating the laws of the State, without regard to the guilt or innocence of the owner. We are next brought to the consideration of a more formidable difficulty, growing out of the act of the legislature under which these proceedings were conducted.

A reference to the act will show that no provision is made for any process or proceeding against the vessel which is confiscated. No provision is made by which the owner or other person interested may appear and controvert the claim of the Commonwealth.

The act simply declares that the offender shall be deemed guilty of a felony; shall be confined in the penitentiary, and shall forfeit to the Commonwealth the vessel or boat so employed, which shall be sold at public auction by the sheriff within ten days after said conviction.

This is the whole enactment touching the forfeiture. And this may be entirely sufficient, so far as the party personally offending is concerned. The indictment, the pro-

cess, and the trial constitute a sufficient notification to him of the grounds and nature of the accusation, and the conviction carries with it his title to the property involved.

It may, however, sometimes happen that the party actually committing the offence has no title to the vessel, and that it was stolen or tortuously taken from the possession of the true owner. It is not impossible that the sheriff or other officer may make sometimes an erroneous seizure, and the vessel condemned to forfeiture was not in fact employed in violating the law. It is not difficult to imagine many grounds of defence the true owner may have against the condemnation of his property. Whatever they may be, the act of the legislature affords him no opportunity of presenting them to any court. No notice, actual or constructive, is required of the seizure of the vessel, and no provision is made for a hearing or a trial.

Under the acts of congress for the protection of the revenue, under all the legislation touching embargo and nonimportation, some proceeding is had directly against the property charged with the offence, and an opportunity afforded parties interested of appearing and defending their rights.

In many cases, the forfeiture for acts done attaches solely *in rem*—without any accompanying personal penalty. In others, the forfeiture is not treated as the punishment of a crime, even though a crime be committed when the forfeiture is incurred. In all of them, with few exceptions, the right of the owner to appear and make defence is conceded. The theory upon which a judgment *in rem* is regarded as binding upon all the world is that all the world have constructive notice of the seizure, with the cause and object of the taking and the time and the place at which any person may appear before a competent tribunal, and have a trial before the condemnation of his property. *Fisher et al.* v. *McGirr*, 1 Gray, 35.

The prosecutions in the present cases involve a proceed-

ing both *in rem* and *in personam*. The offence is punished by confinement in the penitentiary and by the forfeiture of the property. The forfeiture is a part of the conviction and judgment, and is therefore of a criminal character. Such being the case, it is contrary to the bill of rights and to the principles of the social compact to confiscate the property of a person not a party to the proceeding, without notice, without trial, and without affording him an opportunity of being heard in his defence. In *Fisher* v. *McGirr*, 1 Gray, 36, Chief-Justice Shaw, in commenting upon a statute of the State of Massachusetts confiscating intoxicating liquors kept in violation of law, said: "Such being the character of the prosecution, in a high degree penal in its operations and consequences, it should be surrounded with all the safeguards necessary to the security of the innocent. The party should have notice of the charge of guilty purpose upon which his property is declared to be unlawfully held and in danger of being forfeited, a time and opportunity to prepare his defence, and an opportunity to meet the witnesses against him face to face." And so speak all of the authorities. Some exceptions to this rule may be found in cases where grants are made by the State for the accomplishment of objects in which the public is interested and the law, in making the grant, provides for the forfeiture when the object is not accomplished, and also in cases where lands and other property are forfeited to the government for the non-payment of taxes by the owner. In these cases the owner is necessarily aware of his own delinquency, and provision is almost universally made allowing him· time to redeem. With these exceptions, and perhaps a few others standing upon peculiar grounds, it is an inflexible principle of common right that no person can be legally divested of his property unless he is allowed a hearing before an impartial tribunal, where he may contest the claim committed against him and be allowed an opportunity to meet it on the law and the facts.

In judicial proceedings, says Judge Cooley, the law of the land requires a hearing before condemnation and judgment, before dispossession, &c. Forfeitures of rights and property cannot be adjudged by legislative act, and confiscation without a judicial hearing after due notice would be void as not being by due process of law. Cooley's Constitutional Limitation, 441, 450.

In *Bradstreet* v. *Neptune Ins. Co.*, 3 Sumner, 601, Mr. Justice Story said: "It is a rule founded on the first principles of justice that a party shall have an opportunity of being heard in his defence before his property is condemned, and that charges on which the condemnation is sought shall be specific, determinate and clear."

In *Windsor* v. *McVeigh*, 3 Otto, 279, the supreme court of the United States said: "The jurisdiction acquired by the seizure of the property is not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner, and parties interested to appear and be heard upon the charges. To this end some notification of the proceedings beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential. Such notification is usually given by monition, public proclamation, or a publication in some other form. The manner of the notification is immaterial, but the notification is indispensable."

In *McVeigh* v. *United States*, 11 Wallace, 267, the same court emphatically declared· that to deny a party the right of defending his property would be a blot upon our jurisprudence and civilization. See *Underwood* v. *McVeigh*, 23 Gratt. 418. These authorities, and a multitude of others which may be cited, establish the principle beyond all controversy of the right of the petitioners to be heard in defence of their claim to the property involved in these prosecutions. As has already been seen, the law in question affords them no remedy. It requres no notice—per-

sonal or otherwise; it authorizes no proceeding against the vessels beyond the indictment against the offender; it makes no provision for any mode of trial when the owner appears and asserts his title. Such a law must in the nature of things be utterly void, so far as it attempts the confiscation of property of third persons not charged with nor convicted of the offence denounced by the statute. It is no answer to say that the petitioners were in fact notified of the seizure of their vessels, and that they appeared and filed their petitions. These petitions were summarily dismissed by the court below, without a hearing.

Besides this, if the petitioners had notice, it was accidental, and not through any legal notification provided by statute. If they appeared, it was through the courtesy of the court and not from the mandate of the law. This very point arose in *Hibbard* v. *The People*, 4 Michigan, 125. That court, in commenting upon it, used the following language:

"It is said that the proceedings under the liquor law may be so conducted consistently with its provisions as to secure to the person whose property is seized all his constitutional rights. If this is possible, that is not enough. The law must afford to the accused the means of demanding and enforcing his constitutional rights, and if it authorizes a course of proceedure which would deprive him of this, it is void. It is not to be left to the discretion of prosecutor or magistrates to adopt a course of proceedure which may or may not be in conformity with the requisitions of the constitution as they may elect."

The same ground was taken by the supreme court of Massachusetts in *Fisher* v. *McGirr et al.*, already cited.

I also refer to a very able opinion of Judge Hughes, of the district court of the United States, in the Fishery Steam cases, which is a direct authority in point. If the vessels seized by the officer in these cases belonged to the petitioners, they were unlawfully condemned and confiscated

for the want of some proper proceeding to enforce such condemnation and confiscation.

The law under which the vessels were seized being void, so far as the title of third persons is concerned, such title could not be divested by any action of the courts. Whilst the State may, as we have seen, by a proper system of legislation, inflict a forfeiture upon any property injuriously and unlawfully employed in violating her laws, until such system is established the forfeiture cannot reach innocent parties not implicated in the commission of the offence. In this respect the act of the legislature is fatally defective and requires careful revision and amendment. An opportunity ought to have been afforded the petitioners of establishing their title in the present cases, and if they succeeded in doing so, an order should have been entered directing its restoration to them.

The property being under the control of the court, there ceuld have been no sort of difficulty in entering any proper order. In *Osburn* v. *United States*, 1 Otto, p. 474, the supreme court of the United States held that the proceeds of property confiscated and paid into court are under its control until an order for distribution is made, or until they are paid into the hands of the informer entitled to them, or into the treasury of the United States, and that any one entitled to the moneys may apply to the court by petition for a delivery of them to him. This case is a complete answer to the point made by the attorney-general, that the county court was without jurisdiction to make an order for the restoration of the property to the true owners. For these reasons the judgments of the circuit and county courts must be reversed and the cases remanded for proper proceedings to be had upon the petitions of the appellants.

JUDGMENTS REVERSED.