# Staunton

CHARLES ROSENBERG V. COMMONWEALTH OF VIRGINIA.

September 19, 1935.

Present, All the Justices.

The opinion states the case.

*T. W. Messick,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Charles Rosenberg was charged with the conduct and management of a lottery at his place of business in Roanoke. He was tried by the civil and police justice of that city and was convicted. He appealed to its Hustings Court and was again convicted. A jury has fixed his punishment by fine of five hundred dollars, which was confirmed by the trial judge.

The offense charged is forbidden by Code, section 4693, which declares that:

"If any person set up or promote, or be concerned in managing or drawing a lottery or raffle, for money or other thing of value, or knowingly permit such lottery in any house under his control," etc., he shall be confined in jail not exceeding one year and fined not exceeding five hundred dollars.

Code, section 4704, provides that all laws for the suppression of gaming, lotteries, etc., shall be construed as remedial.

Under a warrant police officers of said city raided Rosenberg's place of business. They found there a number of men, including the proprietor, and one Walter Scholtz, both of whom were arrested.

At the time of the raid there was considerable confusion. Scholtz, who was behind the counter appeared to put something in his pockets. He was searched and in them were found some books or cards to which numbered tickets were attached, and loose tickets. Some of these cards with tickets attached were in a drawer back of the cash register.

There is evidence tending to show that these tickets were lottery tickets. If they were knowingly dealt with

in the defendant's shop he is guilty. And if they were dealt with there he must have known about it.

These errors are assigned:

"1. To the action of the lower court in admitting the testimony of W. S. Newton with reference to his knowledge of the purpose for which the cards and tickets were used.

"2. To the action of the lower court in admitting the testimony of J. H. Puckett with reference to his explanation of the use to which the cards and tickets were put.

"3. To the action of the lower court in failing to strike the evidence of the Commonwealth and in refusing to set aside the verdict of the jury."

Newton was one of the officers who made the arrest. He testified that he had many times in raiding places seen books and tickets like those in judgment and that "they are used for baseball pools," although he had no personal knowledge of this use.

At the end of his examination this appears:

"By the court: Just a minute.

"Q. That paper book (indicating)—from which you tore tickets—what is that used for?

"By Mr. Messick: The witness said he did not know.

"By the court: You can except to it.

"A. My understanding is that it is used for gambling on the baseball scores.

"Q. Do you know that?

"A. I cannot say I positively do.

"Q. All right."

Counsel for the defendant objected to the foregoing question.

This officer in many raids had come upon activities like that under review. Of course they ceased upon his advent, but he would have had to have been more than ordinarily guileless not to have known what was going on, although the game was not explained to him by those engaged, and in that sense he had no personal knowledge of its rules.

■ The matter is unimportant, and for this reason:

Officer Puckett has testified and his evidence covers the case. His testimony is not denied. Indeed no evidence was introduced on behalf of the defendant at all. If the jury accepted his statement as it should have been accepted, a verdict of guilty was inevitable, as appears from this excerpt from that officer's statement:

"Q. Here is a ticket (indicating) and I will pull another one (indicating); take this book and ticket (hands to witness) and explain to the jury what that ticket is used for and how the game is operated?

"A. Yes, sir. These tickets (indicating) can be used for either a baseball game or a tip board—either one or both. There is a number under this right there (indicating), which is a tip. Whatever price is set on one of these boards, is the price you pay for that one ticket. If it is ten cents pull or board, it will amount to $10 or $11, and if the amount of the change goes up, the more the board will bring. In the baseball season, you can use that board for baseball, too. The ticket has a number and also a number for the baseball team that wins—it is under that tip there (indicating).

"Q. On this ticket (indicating) is 105—Pitt. What is that?

"A. That is the Pittsburgh Nationals.

"Q. And opposite that is "N"?

"A. That means National League.

"Q. And here is one with the number 108 and St. L.—N. What does that indicate?

"A. Saint Louis Nationals.

"Q. Can you exlpain from that ticket what would have to be done to win a prize or how it is arrived at?

"A. These tickets are used in three or four different ways. If you have the first chance, on the Pittsburgh Nationals, and if they have the high score registered in the game, you get the high money. It is the same way with the Saint Louis Nationals. If you had those two chances, it would do you no good in the American League. Also if you had the low scores on the Pittsburgh Nationals and

Saint Louis Nationals, that pays a certain percentage. The high and the low score pays. Some of these tickets run for the American League and some for the National League. And if Pittsburgh plays Saint Louis and they have a higher score than all the league, the ticket is worth still more.

"Q. Is that ticket (indicating) used for gambling purposes?"

Counsel for the defendants object to the question.

"By the court: Ask him what the ticket is used for.

"By Mr. Cuddy: For what purpose is that ticket used?

"A. It is for no other purpose than gambling.

"By Mr. Messick: I object to 'no other purpose.' "

The foregoing objection is overruled and the defendants except.

By a juror:

"Q. How much do these tickets cost apiece?

"A. That depends on the man that sells them; he can sell them for a dime or a quarter.

"Q. The whole thing?

"A. No, each ticket on there. If you want to make it a fifty dollar jack-pot, you can make it that, and if you want to make it a ten dollar pot, you can make it that."

On cross-examination this witness said that he knew how the game was played, and that "I have testified to what I have seen."

█ This evidence is not only competent but is in itself sufficient to sustain a conviction, and therefore, gives adequate answer to the third assignment of error.

The essentials of lottery are all present, "viz., consideration, prize and chance." *Maughs* v. *Porter*, 157 Va. 415, 161 S. E. 242, 245.

The evidence sustains the jury's verdict.

The judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*