# Richmond

## EARL QUIDLEY, ET ALS., ETC. V. COMMONWEALTH OF VIRGINIA.

May 1, 1950.

Record No. 3626.

Present, All the Justices.

The opinion states the case.

*W. L. Devany, Jr.* and *Bernard Glasser*, for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Frederick T. Gray, Special Assistant*, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Earl Quidley and Herbert Clanton were, on the 5th day of April, 1949, in the Police Court of the city of Norfolk, convicted of the violation of an ordinance of that city declaring it to be unlawful for any person in that city "to conduct, operate, manage or promote, or be concerned in or take any part in conducting, operating, managing or promoting any lottery, raffle, numbers game * * *."

On April 16, 1949, the attorney for the Commonwealth filed in the Corporation Court of the city of Norfolk an information against a Hudson sedan automobile, Virginia license No. 166-287, Motor No. 4844738, and $163.54 in United States currency, alleging the unlawful use of the same in connection with the promotion, operation, and conduct of a lottery and attempted lottery in violation of the statutes of Virginia, and praying that by reason thereof the property be condemned and forfeited to the Commonwealth of Virginia. Earl Quidley, Herbert Clanton, C. Benson and Associates Discount Corporation, the latter two owners of liens on said automobile, and all other interested parties were duly cited to appear to show cause why the

automobile and money should not be condemned and forfeited.

The summons additionally described the automobile as a "1947" model. The certificate of title to the car described it as a "1948" model. The car in question otherwise bore the same motor and Virginia license number set out in the information and summons.

Quidley, Clanton and Associates Discount Corporation appeared by counsel, and duly filed their answers. Quidley said that he was the owner of the automobile mentioned and the sum of $137.68 taken from his person; but that said property was not used in connection with a lottery. Clanton claimed that the sum of $25.86 was his personal property and was not used in connection with the lottery. Associates Discount Corporation said that it was the owner of a lien against a 1948 Hudson sedan automobile bearing Motor No. 4844738 under a conditional sales contract, duly registered on the certificate of title to said vehicle; that it had no knowledge or reasonable cause to believe that said vehicle was used for illegal purposes; that such illegal use was without its connivance or consent; and that its lien was duly perfected and registered prior to seizure by the Commonwealth. It prayed that, in the event the automobile be forfeited, its claim be recognized as a prior lien to the extent of $786.83. C. Benson did not appear or answer.

Neither party demanding a jury, all matters of law and fact were heard and determined by the court. After hearing the evidence of the Commonwealth, the defendants not presenting any testimony in their behalf, the court ordered that the Hudson sedan and the United States currency be condemned and forfeited to the Commonwealth. Va. Code, 1942 (Michie), section 4694 (Code of 1950, section 18-302).

Quidley, Clanton and Associates Discount Corporation applied for and obtained this writ of error.

The evidence, certified to us in narrative form, may be summarized as follows:

On the 4th day of April, 1949, J. F. Estes, H. L. Stovall,

and E. F. Looney, police officers of the city of Norfolk, observed the Hudson automobile driven by Quidley, with Herbert Clanton a passenger in the front seat, proceeding along Virginia Beach Boulevard, in the city of Norfolk, in the direction of Virginia Beach. They followed the automobile in a police car until it reached a gasoline filling station in the county of Princess Anne. Quidley stopped his car in the back of the filling station. Upon the approach of the officers, Quidley and Clanton jumped from their car and ran away. Officer Estes chased and caught Quidley and found on the latter's person 461 slips of paper, called "number slips," and $137.68 in cash. $20 of this money was in small change and the balance in currency of $5, $10 and $20 denominations.

Estes said that he had at numerous times seen the automobile driven by Quidley in the city of Norfolk, and that on one or more occasions it had been parked at a store in Princess Anne county, which had the reputation of being the place where number slips were taken up.

Officer Stovall said that he chased and caught Clanton, who ran around the east side of the building; that Clanton had no number slips on him, but he found 47 slips with numbers thereon in an old automobile tire and Clanton told him "That is all I have." Clanton had $25.86 on his person.

Looney, the other police officer, corroborated his fellow officers. On the following day, Quidley and Clanton were convicted of violating the city ordinance suppressing lotteries.

The slips of paper termed number slips and the currency were placed in evidence as exhibits. Almost without exception they bore the notation "4-4-49," linking them to the date of the arrest of Quidley and Clanton on April 4, 1949, for the violation of the city ordinance. They bore writings, numbers and markings somewhat similar to those described in *Board* v. *Roanoke*, 180 Va. 21, 21 S. E. (2d) 730. All had a serial number at the top or bottom. There was written on many of them a word or words such as "Race," "Home," or "Home and Race," and other symbols such as "K-60,"

and figures such as "106-15," "616-20," etc. in columns. The second of the last mentioned figures indicating the consideration paid by the purchaser of the ticket for a chance on the numbers represented by the first figures were totalized at the bottom of the slip. The handwriting and handmarking on the slips were undoubtedly made by a number of different persons.

Along with the slips or tickets was a book containing used and unused similar slips of paper six sinches long and two inches wide. These slips were in triplicate sheets, which consisted of one piece of medium weight white paper, one of white tissue, and the third pink in color, each bearing the same serial number in red ink. In the book was a sheet of carbon paper of appropriate size.

Introduced in evidence was an exhibit showing the purchase of the Hudson automobile from "Leach's Used Cars," of March 5, 1948, and an unpaid balance of the purchase in the sum of $1,100; a conditional sales contract dated "March 4, 1948," for a lien of $1,492.80, which bore an assignment dated "February 4, 1948," to Associates Discount Corporation; and a Virginia certificate of title of the car dated "April 5, 1948," showing on its face a "C/S" lien dated "March 4, 1948," for $1,492.80 in favor of Associates Discount Corporation and a "D/T" lien for $1,500 in favor of C. Benson.

The defendant, Quidley, contends that having been convicted of a violation of a municipal ordinance, suppressing a lottery, the Commonwealth could not proceed to confiscate his automobile, under a State statute providing for the forfeiture of personal property used in connection with the act for which he was convicted. He relies on Va. Code, 1942 (Michie), section 4775 (19-232 Code of 1950). He further claims that an automobile is not such gambling paraphernalia as is contemplated under the statute, since it is not characteristically designed for gambling alone. Both Quidley and Clanton say there is no evidence to connect the money with the conduct, promotion or operation of a lottery.

The Associates Discount Corporation argues that its lien as an innocent purchaser should hold priority over the forfeiture of the automobile.

The final assignment of error is that the judgment of the trial court was contrary to the law and the evidence and without evidence to support it.

Virginia Code, 1942 (Michie), section 4693 (18-301 of the Code of 1950), makes it unlawful for any person "to set up or promote or be concerned in managing or drawing a lottery or raffle for money or other thing of value * * * or, for himself or other person, buy, sell, or transfer, or have in his possession for the purpose of sale, or with intent to exchange, negotiate, or transfer, or aid in selling, exchanging, negotiating, or transferring, a chance or ticket in or share of a ticket in a lottery or any other right, certificate, bill, token, or device, * * *."

This proceeding was instituted by virtue of Virginia Code, 1942 (Michie), section 4694 (Code of 1950, 18-302), which provides:

"All money and things of value, drawn or proposed to be drawn by an inhabitant of this State, and all money or things of value received by such person by reason of his being the owner or holder of a ticket or share of a ticket in any lottery, or pretended lottery, contrary to this chapter, and all money, gambling paraphernalia, office equipment, *and all other personal property of any kind or character*, used in connection with the promotion, operation or conduct of any lottery, or attempted lottery, shall be forfeited to the Commonwealth, and may be seized by an officer and held to await proceedings for condemnation. * * *" (Italics supplied).

Code, 1942, section 4775 (19-232 Code of 1950), is applicable only to criminal proceedings. The proceeding to forfeit property is against the property and not against the owner of the property or any other person. It is *in rem* wholly and not *in personam.* It is not a criminal proceeding. It is a civil case. *Chrysler Roadster* v. *Common-*

*wealth,* 152 Va. 508, 515, 147 S. E. 243; *Ives* v. *Commonwealth,* 182 Va. 17, 27 S. E. (2d) 906.

Moreover, there is a specific provision of statute that a forfeiture proceeding such as this shall be independent of any proceeding against the owner or claimant of the property for violation of law.

Section 4986 of Va. Code (Michie), 1942 (19-11 of 1950), provides that any forfeiture incurred by violation of sections 4693 and 4694 Code of 1942 (18-301 and 18-302 of Code of 1950) may be enforced under chapter 131, Code of 1942 (chapter 10 of Title 29 Code of 1950), in like manner as a forfeiture may be enforced for a violation of any of the provisions of chapters 127, 128, and 131, Code of 1942 (Titles 28 and 29 of Code of 1950).

Section 3370 of chapter 131 Code of 1942 (Title 29, section 222 of chapter 10, Code of 1950), provides:

"Any person concerned in interest may appear and make defense to the information, which may be done by answer on oath. Ignorance of the respondent or other contestant, that the property seized was being used in violation of law, shall be no defense. Nor shall it be ground of defense, that the person by whom the said property was used in violating the law has not been convicted of such violation. *The said information shall be independent of any proceeding against such person or any other for violation of law."* (Italics supplied.)

In Code of Virginia, 1942 (Michie), section 4704 (18-276 Code of 1950), it is expressly declared that: "All laws for suppressing gaming, lotteries, unchartered banks and the circulation of bank notes for less than five dollars shall be construed as remedial."

We need spend little time or space upon the question of the sufficiency of the evidence to connect Quidley and Clanton with promotion or concern in managing or drawing a lottery. The Commonwealth made out a *prima facie* case, and the owners and claimants of the property offered no proof in contradiction.

 It is nowhere questioned that the numbers game is a lottery. It is a form of gambling which has become quite prevalent. We have had for consideration in recent years numerous cases involving the offense. *Rosenberg* v. *Commonwealth*, 165 Va. 739, 181 S. E. 368; *Abdella* v. *Commonwealth*, 174 Va. 450, 5 S. E. (2d) 495; *Motley* v. *Commonwealth*, 177 Va. 806, 14 S. E. (2d) 28; and *Board* v. *Roanoke*, *supra*. See also, *Forte* v. *United States*, 65 App. D. C. 355, 83 F. (2d) 612, 105 A. L. R. 300.

The possession of a large number of duplicate tickets evidencing chances in such a lottery is relevant and convincing proof that the person is concerned in promoting, managing, or drawing the lottery. The sale, the possession of the evidence of the sale, the collection of the slips, and delivery of them and the money are necessary steps in the operation of the venture. Each step constitutes aid in its conduct.

The facts and the circumstances inescapably connect Quidley and Clanton with concern in managing or promoting a lottery. The testimony of the police officers is uncontradicted. Quidley and Clanton gave no explanation to the officers or to the trial court of their possession of the tickets and the money, or as to the use being made of the automobile. The officers had watched Quidley for days preceding his arrest on April 4th. They had frequently seen the car in question parked at a store which had the reputation of being a place where number slips were taken up. Every fair inference pointed directly to the conclusion that Quidley and Clanton were at least acting as collectors of the duplicate slips for the drawing of the winning numbers.

In determining the guilt or innocence of Quidley and Clanton the court had the right to consider and weigh, in connection with the other facts and circumstances, their flight upon the approach of the officers. *Duty* v. *Commonwealth*, 137 Va. 759, 764, 119 S. E. 62; *Bowie* v. *Commonwealth*, 184 Va. 381, 35 S. E. (2d) 345. The attempt of

Clanton to get rid of the possession of the slips was not without significance.

The words underscored in section 4694 of Code of 1942 (18-302 of Code 1950), are all inclusive. An automobile, a horse and wagon, a wheelbarrow, and a bicycle come within the classification. In a large scale numbers operation some mode of transportation is necessary. It is essential that the operators of lotteries have in their possession duplicates of tickets sold or some other identification of the particular numbers which the customers have bet on before the winning numbers are announced.

The evidence in this case directly points to the fact that the Hudson automobile was being used by Quidley and Clanton to pick up duplicate tickets of chances sold for transportation to the lottery bank or banker. Quidley had tickets which could be sold. As we have stated, the automobile had frequently been seen parked in front of places where gambling operations were reputed to be conducted. There was no evidence that the driver of the car, or his passenger, was on a lawful mission. It appeared by their flight that they realized they were engaged in an unlawful enterprise.

■ No attempt was made by Quidley to explain his possession of the $20 in small change, a significant amount of such change to be carried, under the circumstances, without explanation. A lottery cannot well be conducted without money. The money in the possession of Quidley was either proceeds from the sales of lottery tickets, or was available for use in such sales, or the personal property of Quidley. In the absence of any explanation by Quidley, it may be readily inferred that it was being used for prohibited purposes. We cannot say that the trial judge erred in his conclusion.

■ There was no description of the money found on Clanton except as to its amount. The mere fact that he had $25.86 on his person is not indicative of its use in pro-

moting a lottery or that it was the proceeds from the operation of a lottery. There is not shown any direct or circumstantial connection between this money and the lottery. For that reason we think the trial judge erred in forfeiting the $25.86. The amount should be released to Herbert Clanton.

██ ██ The contention of Associates Discount Corporation is without merit. It is settled that the legislature has ample power to provide for the forfeiture of property employed in defiance of the laws of the State, although the owner thereof has no guilty knowledge that it is being put to such use. *Boggs* v. *Commonwealth*, 76 Va. 989; and *Landers* v. *Commonwealth*, 126 Va. 780, 792, 101 S. E. 778.

Virginia Code, 1942 (Michie), section 3370 (29-222 of Code of 1950), expressly provides that: "Ignorance of the respondent or other contestant, that the property seized was being used in violation of law, shall be no defense." The ignorance of a lienor in a forfeiture proceeding, such as this, constitutes no defense. The test of liability is the guilty act and knowledge of the person in charge of the property.

██ The error in the description of the Hudson automobile made by referring to it in the summons as a 1947 model is not fatal. The description claimed in the information included the make, engine number, and license number of the vehicle. The description in the information and summons gave full notice to the owner and the lienor that the proceeding was against the automobile seized. Its identity has never been in doubt.

The failure of the owner to assert the lien secured under the deed of trust set out in the certificate of title, the conflict between the date of the assignment of the conditional sales contract "February 4, 1948" and the date of the purchase agreement of "April 4, 1948" considered in connection with the date of the recordation of the certificate of title "April 15, 1948" may or may not be significant. However,

in the view we take of the case, these matters require no discussion.

For the foregoing reasons, we are of opinion that the judgment of the trial court should be affirmed, save as to the confiscation of the $25.86 found on the person of Herbert Clanton, and it is accordingly so adjudged.

*Affirmed as modified.*