# Richmond

George Fabian Hayden v. Commonwealth of Virginia.

March 5, 1962.

Record No. 5402.

Present, All the Justices.

*Thomas W. Moss, Jr. (Parsons, Stant & Parsons, on brief), for the plaintiff in error.*

*M. Harris Parker, Assistant Attorney General (Frederick T. Gray, Attorney General, on brief), for the Commonwealth.*

Buchanan, J., delivered the opinion of the court.

George Fabian Hayden, the appellant, was convicted by a jury of violating the anti-lottery statute, § 18-301 of the 1950 Code, now § 18.1-340 (1960 Replacement Vol.), and was sentenced in accordance with the verdict to sixty days in jail and a fine of $250.

He contends here, first, that the evidence was not sufficient to establish his guilt.

The only evidence in the case was that of three police officers introduced by the Commonwealth, who testified as follows:

In the afternoon of Thursday, June 9, 1960, State Trooper Martin, accompanied by Inspector Lamb of the Norfolk county police, went to a house which they were authorized by a warrant to search, located immediately behind a residence in the Broadmoor section of Norfolk county. Looking through a glass panel of the front door the trooper saw the defendant and one Doris Jean Hayden, not his wife, sitting at a table. The trooper knocked and requested admittance, saying that he had a search warrant. After a little delay defendant opened the door, pointed his finger at the officer and said, "Hold it right where you are. I want to see the search warrant." It was shown to him and when the officers entered they found on the table referred to these items: A telephone, with a brown metal phone directory beside it; two small notebooks, a legal pad ruled off into small squares; a sealed bag containing $38, of which $30 was in bills, $1.20 in dimes, 70¢ in nickels, 35 pennies, and $5.75 in quarters and half-dollars.

Also on the table were an adding machine and a second bag of money with the initials "C. B." on the outside and containing $31.10, made up of $17 in bills, $5.75 in halves and quarters, $6.80 in dimes, 80¢ in nickels and 75¢ in pennies.

In the pockets of his trousers the defendant had $284 in bills and $2.07 in change.

Elsewhere in the room were eleven rolls of adding machine tape, 33 small notebooks, a fountain pen and a number of pencils, money wrappers and rubber bands.

After the officers had been in the house about two minutes the telephone rang and when the trooper picked it up to answer the defendant lunged at it and attempted to break the connection.

In the course of Inspector Lamb's conversation with the defendant he asked him where this money came from and the defendant told him "it was money collected for the last three days on these numbers."

Later in the day of defendant's arrest Lieutenant Mundie, of the State police, questioned the defendant in the county jail and wrote down his answers. Defendant told him that the eleven rolls of adding machine tape, the rubber bands, money wrappers and pencils came from a coffee shop in Broadmoor operated by him and his sister; that

the 33 notebooks also came from that shop but he did not know what they were used for. He said he did not know to whom the telephone directory belonged, but that he wrote some of the numbers in it. The defendant said that the money found in the pockets of his trousers was his personal money and not involved in the numbers operation.

Defendant further said that the $31.10 in the bag with the initials "C. B." on it was the numbers collections for Monday, Tuesday and Wednesday; that the [sealed] bag marked $38 was also the collections for Monday, Tuesday and Wednesday, and that these collections were picked up from unknown colored males and that "he imagined it to be numbers money"; and that he "takes it down the highway and turns it over to another colored fellow, who is unknown."

Lieutenant Mundie asked the defendant what he got out of this and defendant replied, "Just a little pocket change, that's all." Mundie told defendant he had heard that about a month previously the defendant had had a hit on a number but couldn't pay off and had pulled a disappearing act, telling everybody that the law was right hot on him, and defendant replied, "That's a damn lie." "Anybody ever hit on my number got paid."

The anti-lottery statute, *supra*, now § 18.1-340, provides, *inter alia*, that if any person promote or be concerned in managing or drawing a lottery; or knowingly permit such lottery in a house under his control, or knowingly permit the sale in such house of any chance or ticket in a lottery; or for himself or another buy or sell or have in his possession for the purpose of sale, or with intent to aid in selling, a chance or ticket in a lottery, he shall be punished as provided.

The numbers game is a lottery and a form of gambling which has become quite prevalent. *Quidley* v. *Commonwealth*, 190 Va. 1029, and cases cited at p. 1038; 59 S. E. 2d 52, 56.

The *Quidley* case was for the forfeiture of an automobile because of its use in connection with the operation of a numbers game. We said (190 Va. at 1039, 59 S. E. 2d at 57) that in a large scale numbers operation some mode of transportation was necessary, and "It is essential that the operators of lotteries have in their possession duplicates of tickets sold or some other identification of the particular numbers which the customers have bet on before the winning numbers are announced."

The defendant argues from this that there can be no conviction of a defendant without proof of his possession of some kind of lottery ticket. That is a mistaken notion. The things forbidden by the

lottery statute include being concerned in the operation of a lottery, such as a numbers game, or selling or having in possession for the purpose of selling, or aiding in selling a chance or a ticket in the numbers game. Whether a defendant has done any of the things prohibited by the statute may be shown by either direct or circumstantial evidence, or both. Numbers tickets are essential in the operation of the game, but possession of such a ticket is not essential to the proof of defendant's guilt. That may be shown by other evidence if sufficient to convict. Cf. *Motley* v. *Commonwealth*, 177 Va. 806, 810, 14 S. E. 2d 28, 29.

Here there was not only highly persuasive evidence of possession by the defendant of articles indicating guilty knowledge and participation, but there were also the admissions by the defendant that he was in fact aiding in the operation of a numbers game and had possession of money used in, or resulting from, that operation, and that he was also in possession of equipment and paraphernalia, readily associated with and useful in the operation of such a game; and this money and material were in a house apparently under the defendant's control. Defendant's attempted explanation of the origin and ownership of some of this money and equipment was not convincing and this along with his attitude and conduct at the time of the search constituted incriminating circumstances, as the jury had the right to conclude.

The admissions made by the defendant together with the corroborating facts and circumstances shown by the evidence were ample to establish the *corpus delicti* and to support the verdict of guilty rendered by the jury. *Wheeler* v. *Commonwealth*, 192 Va. 665, 670, 66 S. E. 2d 605, 607; *Campbell* v. *Commonwealth*, 194 Va. 825, 833, 75 S. E. 2d 468, 473.

The only other assignment argued by the defendant is that the court erred in giving Instruction A. That instruction simply set forth the provisions of the statute and the punishment prescribed by it. The record shows no objection made to it by specific reference. It may be inferred that in the course of the argument on instructions as it appears in the record the defendant was referring to Instruction A in stating these objections: that there was no evidence that the defendant (1) was concerned in managing or drawing a lottery, or (2) knowingly permitted such lottery in any house under his control.

As appears from the statement of the testimony, there was evidence introduced by the Commonwealth on both points, and its weight was

properly submitted to the jury, who were told in another instruction that they were not to speculate or go outside of the evidence but were to confine the trial of the case to the evidence given by the witnesses; and in this and two additional instructions given for the defendant the jury were told that if there was any reasonable hypothesis consistent with the innocence of the defendant they must find him not guilty. His rights were amply guarded by the instructions.

We find no prejudicial error and the judgment below is accordingly

*Affirmed.*