# Richmond

## WALTER FRANCIS RIGGAN v. COMMONWEALTH OF VIRGINIA.

October 11, 1965.

Record No. 6034.

Present, All the Justices.

*Louis Koutoulakos (Varoutsos, Koutoulakos & Arthur, on brief),* for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General, on brief),* for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

Upon a plea of not guilty, Walter Francis Riggan, defendant, was found guilty by a jury and in accordance with the verdict was sentenced by the court to a term of one year in the penitentiary and a fine of $500 on an indictment charging that he did "on or about the 22nd day of January, 1963, operate and conduct a lottery, commonly known as the Numbers Game," in violation of Code, § 18.1-340. Defendant is here upon a writ of error and supersedeas awarded him to the judgment rendered on the verdict.

On January 22, 1963, at approximately 9 a.m., William K. Stover, a member of the vice squad of the Arlington county police department, appeared before Judge Paul D. Brown and made affidavit[1] for a warrant to search the premises "known as Apartment 604C, 3000 Spout Run Parkway" in Arlington county in connection with the

---

[1] [Affidavit]

Commonwealth of Virginia:

County of Arlington, to wit:

Before Me, —————————, Judge of County Court for the County aforesaid, this day appeared ——————— Officer William K. Stover ——————— and made affidavit as follows:

(1) Substantially the offense in relation to which search is to be made. ——————— Operation of a lottery, to-wit, numbers game, in violation of Section 18.1-340 of the Code of Virginia as amended.———————

(2) The material facts constituting probable cause for issuance of the warrant. ——————— Personal observation of the premises and information from sources believed by the police department to be reliable.———————

(3) What is to be searched for under the warrant? ——————— Lottery tickets, including numbers slips, and any gambling paraphernalia made, provided or procurred (sic) for drawing a lottery.———————

(4) The house, place, vehicle, or baggage to be searched.——————— All of a certain premises known as Apartment 604C, 3000 Spout Run Parkway, Arlington County, Virginia.———————

Signature of Affiant ——————— William K. Stover ———————

Subscribed And Sworn To before me this ——————— 22nd ——————— day of Jan. ——————— 1963.

———————Paul D. Brown———————

Judge

Certified to the Clerk of the Circuit Court of Arlington County

———————Paul D. Brown———————

Judge

alleged operation of a lottery or numbers game therein. Pursuant thereto the judge issued the warrant[2]. About a half hour later Stover met with Sergeant Kadel and other members of the vice squad. It was then decided that the "raid" would take place about 4 p.m. on that day and that the members of the squad would meet in the manager's office of the apartment house at 3 p.m.

Sergeant Kadel and detective Hughes arrived at the apartment house between 2 and 2:30 p.m., secured a master key to the building from the manager, entered the telephone room in the basement, proceeded to tap the telephone wire to apartment 604C which was to be searched, and listened to conversation passing over the wire. Kadel said that he "listened in to make sure there wasn't any tip-offs." Hughes stated that his "particular reason [for listening] was primarily curiosity" and also to obtain information about other operations.

The officers involved in the raid had obtained information from a confidential source prior to going to the apartment house that a person would appear at the door to apartment 604C at approximately 4 p.m. They knew that the door was barred and they made arrangements with the tenant across the hall for them to wait in her apartment until this person arrived at apartment 604C. Shortly after 3 p.m. officers Stover, Bonneville, Moorefield, Hayden, Hughes and Kadel entered the apartment across the hall, and about 4 p.m. a woman, later identified as Marian Williams, appeared at the door to apartment 604C. When the door was opened for her to enter, the

---

2                   [Search Warrant]
In the County Court of Arlington County, Virginia
To *the Sheriff or any Police Officer of said County:*
Whereas an affidavit has been filed with me pursuant to law and complaint made before me by ——— Officer William K. Stover ——— that ——— a lottery, to-wit: a numbers game is being operated in the premises described below, and that lottery tickets, including numbers slips and gambling paraphernalia made, provided or procurred (sic) in drawing a lottery are believed to be concealed therein. ——— and it appearing that there is reasonable and probable cause for such belief;
These are therefore to authorize and require you, in the name of The Commonwealth of Virginia, to enter in the day or night time the house, place, vehichle (sic), or thing dscribed as follows: ——— All of a certain premises known as Apartment 604C, 3000 Spout Run Parkway, Arlington County, Virginia. ——— and there diligently search for the said goods and bring the same and the person or persons in whose possession the same are found, before me to be disposed of or dealt with according to law.
Given Under My Hand And Seal this ——— 22nd ——— day of ——— Jan. ——— 1963.

                                         ———Paul D. Brown———
                                              Judge

officers rushed in immediately behind her. As they entered Stover announced: "Police, we have a search warrant for numbers slips."

Riggan, the defendant, was in the living room attired in his pajamas. There were two beds in the bedroom placed against one another in an L-shape. Carmen Nodarra, who rented the apartment, was on one of the beds and was dressed in "lounging" clothes. Numbers slips, desk pads, paper pads, pencils, dice, an address book, telephones, a telephone book, a purse and a walking cane were found on the beds. The officers also found $118.42 in coins and currency and a stack of "cut cards" in a dresser drawer and $167 in coins and currency together with numbers slips in the handbag of Marian Williams, the person who entered the apartment immediately before the raid commenced.

In the closets there were about twenty suits of clothes together with shirts, ties and a pair of bedroom slippers which belonged to defendant. Near the entrance door was a steel bar which fitted into brackets bolted on the door frame.

After the officers announced that they had completed their search, Riggan went to a dresser, took a roll of $20 bills from the bottom of "a little lamp or something" and put the money into his pocket. He told Carmen Nodarra: "Don't say anything, they have got us, don't say nothing."

The following return was made on the search warrant by officers Stover and Bonneville:

"Executed the within warrant on January 22, 1963 by searching Apartment 604C, 3000 Spout Run Parkway, Arlington, Virginia and seizing three telephones, three desk pads, one bag containing dice, pencisl (sic), ruler, telephone books and numbers slips, lewd books, cut cards, U. S. currency in amount of $118.42, U. S. currency in amount of $167.00, approx. 150 capsules of dexamyl, 1 ladies handbag containing billfold with ident. and miscellaneous papers and one steel bar, and taking into custody one Walter F. Riggan, Carmen D. Nodarra and Marian Williams in whose premises the said articles were found. Given under my hand this 23rd day of January 1963."

In his assignments of error, defendant contends that the court erred (1) in refusing to quash the search warrant and affidavit; (2) in refusing to grant his motion to suppress all evidence obtained as a result of an illegal search and wire tap; (3) in refusing to strike the Commonwealth's evidence, and (4) in refusing to set aside the verdict and grant him a new trial on the grounds that the verdict was contrary

to the law and the evidence and the *corpus delicti* had not been proved.

■ First, defendant challenges the sufficiency of the affidavit upon which the search warrant was issued. Officer Stover stated the following material facts in the affidavit as constituting probable cause for the issuance of the warrant: "Personal observation of the premises and information from sources believed by the police department to be reliable." Defendant says that the uncontroverted testimony revealed that Stover did not have the premises under personal observation. He further states that there was "no evidence of any reliable character to suggest that defendant was engaged in any numbers operation." Hence, he argues, the affidavit and warrant were void. We find these contentions to be without merit.

Stover did testify at the hearing on the motion to quash that he personally did not have the individual apartment (604C) under observation until after he had obtained the search warrant and just before the raid. However, the uncontradicted evidence shows that he had the apartment building under surveillance. Stover testified that on three occasions during the months of December, 1962 and January, 1963 he personally observed Riggan "come and go" from the apartment building. Apartment 604C was a part and parcel of this building.

The police department first became suspicious of the activities in apartment 604C after an investigation was made therein as a result of a child falling out of one of the windows. Later, in November, 1962, officer Hartel went to apartment 604C to execute a warrant of arrest on Riggan for assault. On this occasion Carmen Nodarra came to the door and asked Hartel if he had a search warrant for the premises. After Hartel informed her of the warrant for Riggan's arrest she closed the door, and there was considerable delay and "scurrying around" in the apartment before he was permitted to enter and execute the warrant on Riggan. After he entered, Hartel observed some telephones in a closet which had been cut from their wires, and he made a report of the situation to the police department. Stover had knowledge of this report and the vice squad commenced an investigation of the activities in the apartment. Stover testified that in addition to his personal observation of the premises he received information from two informants and two police officers that a lottery was being conducted in apartment 604C. He stated that he believed these sources to be reliable, and there was no showing that such sources were not reliable.

In the recent case of *Tri-Pharmacy, Inc.* v. *United States*, 203 Va. 723, 127 S.E. 2d 89 (cert. den. 371 U.S. 962, 9 L. ed. 2d 509, 83 S.Ct. 542) an attack was made on an affidavit similar to the one here in question. The affidavit read in part: "The material facts constituting probable cause for issuance of the warrant. Personal observation of premises and information from sources thought by the Police Department to be reliable." We held that the affidavit alleged sufficient facts to constitute probable cause for the issuance of the search warrant; that the warrant was valid, and that the evidence obtained as a result of the warrant was admissible. In that case Mr. Justice Buchanan, speaking for the court, discussed at some length the law relating to the sufficiency of an affidavit to constitute probable cause for the issuance of a search warrant. It will serve no useful purpose to restate those principles, but reference to them is hereby made. (203 Va. at pp. 727-730.)

We are not unmindful of the recent case of *Aquilar* v. *Texas*, 378 U.S. 108, 12 L. ed. 2d 723, 84 S.Ct. 1509, not cited in the present case by either party. There, the affidavit given by police officers to obtain the search warrant recited in part: "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purposes of sale and use contrary to the provisions of the law." By a divided court it was held that the affidavit did not provide a sufficient basis for a finding of probable cause; that the search warrant should not have been issued, and that the evidence secured as a result of the warrant was not admissible.

The *Aquilar* case and the case at bar are distinguishable. The affidavit in *Aquilar* was based solely upon hearsay information, whereas in the present case the affidavit recited "personal observation of the premises" as well as "information from sources believed by the police department to be reliable."

We hold that the evidence shows that Stover personally observed the premises as stated in the affidavit; that the sources of information concerning the operation of the lottery were shown to be reliable; that the affidavit was sufficient to constitute probable or reasonable cause for the issuance of the search warrant, and that the court did not err in refusing to quash the affidavit and search warrant.

Defendant next contends that since there was a wire tap by officers Kadel and Hughes shortly before the raid none of the evidence

obtained as a result of the raid should have been admitted. Out of the presence of the jury, Hughes read from some skimpy notes he had taken during the wire tap concerning conversations he had intercepted which indicated that a lottery was being operated and that "Marian" was coming to the apartment that afternoon. It developed that "Marian" was the person (Marian Williams) who appeared at apartment 604C and caused the door to be opened just before the officers entered to make the raid. Defendant argues that the officers secured information by means of the wire tap which they did not previously have and which they vitally needed "as to possible activities in that apartment."

Prior to the jury trial the court granted defendant's motion to suppress evidence obtained under the illegal wire tap and overruled his motion to quash the search warrant and to suppress evidence obtained thereunder.

The record clearly shows that the search warrant was issued hours before the wire tap; that the officers had confidential information before the wire tap that someone would appear at the door of apartment 604C about 4 p.m.; that none of the information received from the wire tap was used in connection with the issuance of the warrant or the execution of the raid in any way, and that no evidence was introduced at the trial which had been obtained by means of the wire tap. Hence, the trial court did not err in refusing to suppress the evidence obtained as a result of the raid.

Finally, defendant contends that the evidence was, as a matter of law, insufficient to support a finding that he was guilty as charged in the indictment. He argues that there was no showing that the alleged numbers slips were made by him or that they represented bets placed for the day in question. He says that the *corpus delicti* was not proved; that at best he was convicted upon "mere suspicion and surmise"; that there was no direct testimony of his guilt; and that other than his "mere presence" the circumstantial evidence was not sufficient to overcome the presumption of his innocence.

A violation of the lottery statute (18.1-340) may be shown by either direct or circumstantial evidence, or both. While numbers slips are essential in the operation of the numbers game, possession of such slips is not required to establish a defendant's guilt. His guilt may be shown by other evidence if sufficient to convict. *Hayden* v. *Commonwealth*, 203 Va. 398, 401, 124 S.E. 2d 13.

The facts and circumstances clearly established that a lottery was

being operated and conducted, at least in part, in apartment 604C on January 22, 1963. At that time, when the raid took place, the officers seized numbers slips, desk pads, paper pads, pencils, an address book, telephones and a telephone book which were found on either one or both of the beds. They also seized $118.42 in coins and currency and a stack of "cut cards" found in a dresser drawer, $167 in coins and currency together with numbers slips found in the handbag which Marian Williams brought to the apartment, and a steel bar which was used to secure the entrance door.

Officer Stover, who qualified as an expert witness, stated that he had been engaged in the investigation of various numbers operations for about 5 years and that he had testified in court as an expert relative to the numbers game on numerous occasions. He explained in detail how the numbers business operated, identified the slips of paper found on the beds and in Marian Williams' handbag as numbers slips and stated that the "cut cards" and some of the other items seized were relevant to the operation of the game.

The evidence was also sufficient to show that defendant exercised control over the premises and participated in the operation of the lottery on the date in question. On three occasions prior to the raid officer Stover observed him coming and going from the apartment building. According to Stover, defendant was standing "about halfway behind the door" attired in his pajamas when entry was made for the raid. The officers found in the closets about twenty suits of clothes as well as bedroom slippers, shirts and ties. Defendant admitted that the suits were his and put on one of them just before the officers carried him to the police station. He picked up the cane which had been lying on a bed along with gambling paraphernalia with the explanation that he had injured his leg while participating in athletics. Moreover, he said to Carmen Nodarra: "Don't say anything, they have got us, don't say nothing."

After the officers had completed their search and had informed defendant that anything they might have missed was his, he went to the dresser, took a roll of $20 bills from a hiding place in the bottom of "a little lamp or something", and put it into his pocket. Defendant made no explanation of the presence of the money, numbers slips, "cut cards", or other paraphernalia seized. In fact he did not testify at the trial or offer any evidence in his behalf. For cases involving the sufficiency of the evidence to sustain a conviction for violation of the anti-lottery laws see *Motley v. Commonwealth*, 177 Va. 806, 14 S.E.

2d 28; *Quidley v. Commonwealth*, 190 Va. 1029, 59 S.E. 2d 52; *Hayden v. Commonwealth*, 203 Va. 398, *supra; Tri-Pharmacy, Inc. v. United States*, 203 Va. 723, *supra.*

We conclude that the trial court did not err in refusing to strike the Commonwealth's evidence and in refusing to set aside the verdict.

For the reasons stated, the judgment appealed from is

*Affirmed.*