## Commonwealth *v*. Stoe, Appellant.

Argued March 22, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Lemuel B. Schofield*, with him *Merrill L. Hassel* and *John B. Brumbelow*, for appellant.

*John W. Beyer*, Assistant District Attorney, with him *John Milton Ranck*, District Attorney, for appellee.

OPINION BY RHODES, P. J., July 20, 1950:

The defendant, Richard G. Stoe, was indicted under section 607 of the Act of June 24, 1939, P. L. 872, 18 PS §4607. This section, relating to pool selling and bookmaking, provides inter alia: "Whoever . . . occupies any place with books, apparatus or paraphernalia for the purpose of recording or registering bets or wagers, . . . or assists or abets in any manner in any of the acts forbidden by this section, is guilty of a misdemeanor, . . ." At the close of the Commonwealth's case at the trial, defendant demurred and presented no defense. The demurrer was overruled by the trial judge and the case was submitted to the jury which returned a verdict of guilty. Defendant's motion for a new trial was refused, and from the judgment and sentence defendant has appealed.

Appellant contends on this appeal that the uncontradicted evidence presented by the Commonwealth was not sufficient to warrant and sustain his conviction.

About two o'clock in the afternoon of February 19, 1949, several officers of the Lancaster Police Department, as the result of information received, having a search warrant, sought admission to a dwelling house situate at 515 Rockland Street, in the City of Lancaster. Without disclosing their identity they were admitted by appellant. In a bedroom on the second floor they found a telephone equipped with a muffler, which was listed in the telephone directory under the name of Stoe Bros., produce. In the room was a radio by which both long and short wave broadcasts could be received. In a desk was a set of earphones which could be attached to the radio. On the desk were a number of blank pads, some pencils, and a box with 8 compartments in which

compartments were 91 slips of paper. There were also an adding machine, $9 in bills, and an automatic telephone directory in the room. The slips contained markings which, according to the testimony of one of the police officers, were in code and designated the race track then in operation, the names of horses and their positions, and the bets thereon. Also found in the room were two racing publications, one of which was a "William Armstrong Daily Sports" sheet by reference to which the markings on the slips could be correlated and integrated. One of the slips, typical in marking to all, contained the following notation:

1 H 2

Joseph Brandt

2 D

2 H 6

Bragdoccio

L M

It was testified relative to this slip that 1 H 2 referred to the first race at Hialeah race track; and that "Joseph Brandt" was the name of the horse racing in the first race at that track. The markings on another slip—"2 SP 8, Sunsho," were explained by the witness to refer to a horse named Sunsho entered in the second race at Sunshine Park, Florida. Appellant was present while the officers searched the room. Within a few minutes the officers answered the telephone in the room five times. Most of the calls asked for "Dyke" by which name appellant was known. One person who called asked for the odds on "Red Count." On the first floor of the residence a telephone was installed under the name of appellant's wife. There was nothing on the premises having any connection with the fruit or produce business or indicative of the conducting of such business there. On the same afternoon after the raid and arrest, appellant came to the detective bureau and asked for

the slips that had been taken from him. Appellant asked to have the slips "to straighten out things."

We are of the opinion that the evidence, although circumstantial in nature, was such as to require that the case be submitted to the jury, and that it was sufficient both in kind and quality to sustain the conviction. The facts when considered collectively were sufficient to overcome the presumption of innocence and to show appellant's guilt beyond a reasonable doubt. See *Com. v. Prezioso*, 157 Pa. Superior Ct. 80, 86, 41 A. 2d 350; *Com. v. Fisher*, 166 Pa. Superior Ct. 245, 70 A. 2d 372.

The evidence clearly establishes that appellant occupied the premises in question. His physical presence, his admission of the officers to the premises, the listing of one telephone in his wife's name and the fictitious listing of the other, and a number of calls for him in the space of a few minutes afford a sufficient basis for the jury to determine that he was occupying the premises within the meaning of the Act.

If separately considered, the presence of many of the articles found in the bedroom might be without significance. But these items, when considered together with all the circumstances, justified the jury in concluding that appellant occupied the premises "with books, apparatus or paraphernalia for the purpose of recording or registering bets or wagers." Some of the material or items of personal property could be used for various purposes, but, combined with the 91 code marked slips and the correlating racing publications, they constitute books, apparatus or paraphernalia for a purpose prohibited by the Act. Appellant's request for the return of the slips is indicative not only of his occupancy of or connection with the premises, but also of the purpose for which the premises and its contents were used.

As said by the Supreme Court in *Com. v. Giacobbe*, 341 Pa. 187, 192, 19 A. 2d 71, 74: "Facts which individ-

ually are not of controlling importance may, when cumulated, lead to probable or even well-nigh inevitable inferences, since each incriminating fact brings not merely additional but often multiple weight to the conclusion which it tends to establish." See, also, *Com. v. Wentzel,* 360 Pa. 137, 143, 61 A. 2d 309; *Com. v. Fisher,* supra, 166 Pa. Superior Ct. 245, 70 A. 2d 372.

The judgment of the court below is affirmed, and defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with its sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.