Commonwealth, Appellant, *v.* McDade.

Argued March 19, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

Before TOAL, J.

*Paul R. Sand,* Assistant District Attorney, with him *Ernest L. Green,* Assistant District Attorney, *Ralph B. D'Iorio,* First Assistant District Attorney, and *Jacques H. Fox,* District Attorney, for Commonwealth, appellant.

*Melvin G. Levy,* with him *McClenachan, Blumberg & Levy,* for appellees.

OPINION BY RHODES, P. J., April 12, 1962:

Robert George McDade, Edith McDade, and James E. Spring were each indicted by the grand jury of Delaware County and charged with offenses of bookmaking and conspiracy. Section 607, Act of June 24, 1939, P. L. 872, 18 PS §4607; section 302, Act of June 24, 1939, P. L. 872, 18 PS §4302. Their cases were called for trial before a judge and a jury. At the conclusion of the Commonwealth's testimony each defendant demurred to the Commonwealth's evidence, and the demurrer was sustained by the trial judge as to each.[1]

---

[1] Before sustaining the demurrers, the trial judge stated to the jury:

"So you can bet your bottom dollar Mr. Spring was not in the McDade house for any good reason and they are all three guilty . . .; but because of the law, which protects even a guilty person, they will have to be discharged by the court; so we take the case away from you twelve jurors and discharge them."

Thereafter the Commonwealth took these appeals which are now before us for determination. The question presented is whether the evidence submitted by the Commonwealth was sufficient to have the matter submitted to a jury under the counts in the indictments. It was established by the Commonwealth that investigators from the district attorney's office had the McDade home under surveillance for a period of two or three weeks. Having a search warrant, they were admitted to the premises by Edith McDade. The McDade home was a single split-level house. As they entered, Edith McDade ran to the basement and "hollered" to someone as the detectives followed her downstairs. They there found James E. Spring sitting at a desk upon which were three telephones, some sheets of paper, a radio, and an adding machine. Of the three telephones, two of them carried telephone numbers of the State of Delaware; the third was a local exchange. In addition, there was another telephone on the first floor, with an extension on the wall as you came down the stairs. The telephones on the desk in the basement were connected with each other by push buttons. The radio was tuned in to the results of the races. A telephone kept ringing off and on giving the results at the different tracks. There were approximately 28 telephone calls which were answered by the detectives. Inquiries were made relative to the races. Some of the calls asked that bets be placed on horses which were running that day at Delaware Park. During the period that the detectives were questioning Spring and Edith McDade, Robert George McDade entered. Edith McDade said that she knew Spring, and that maybe he was taking bets but she was not sure. She admitted that Spring had been coming to the McDade home for the past few weeks and used the telephones which she had installed. Spring asserted that he was in the toy business. There was nothing to indicate his connection with any such

business. The detectives recovered a sheet, which was described as a settlement sheet typical of bookmakers, showing the amount of money the bookmaker owed the different betters.

"The proper test to apply to the validity of a demurrer is whether the 'evidence of record' (Commonwealth v. Ernesto, 93 Pa. Superior Ct. 339, 341, 342), the 'admitted state of facts' (Commonwealth v. Kerr, supra [150 Pa. Superior Ct. at page 601, 29 A. 2d at page 342]), the 'evidence produced' (Commonwealth v. Williams, 71 Pa. Superior Ct. 311; Commonwealth v. Kolsky, supra [100 Pa. Superior Ct. at page 599]), and 'all the facts testified to and the inferences reasonably drawn therefrom' (Sadler, Criminal Procedure in Pennsylvania, Vol. II, §541, pp. 611, 612), would support a verdict of guilty." *Com. v. Frank,* 159 Pa. Superior Ct. 271, 278, 48 A. 2d 10, 14.

We are of the opinion that the court below erred in sustaining the demurrers. As we said in *Com. v. Mattero,* 183 Pa. Superior Ct. 548, 553, 132 A. 2d 905, evidence concerning telephone calls placing bets, which were answered by the police during the raid, was admissible to establish the corpus delicti.

The evidence discloses sufficient gambling paraphernalia found on the premises occupied and owned by the McDades and under the control and supervision of the defendants to establish a prima facie case. See *Com. v. Gregory,* 183 Pa. Superior Ct. 53, 57, 127 A. 2d 788. There was a definite connection of defendants with the establishment which was used for bookmaking purposes. See *Com. v. Fisher,* 166 Pa. Superior Ct. 245, 70 A. 2d 372; *Com. v. Stoe,* 167 Pa. Superior Ct. 300, 74 A. 2d 526; *Com. v. Smith,* 186 Pa. Superior Ct. 89, 140 A. 2d 347. An unlawful agreement may be inferred from the circumstances.

The order sustaining the demurrers to the evidence is reversed in each appeal with a procedendo.