Commonwealth *v.* Ametrane, Appellant.

Argued December 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Joseph W. deFuria,* with him *deFuria, Larkin & deFuria,* for appellant.

*Ralph B. D'Iorio,* Assistant District Attorney, with him *Domenic D. Jerome,* First Assistant District Attorney, and *Jacques H. Fox,* District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, P. J., June 17, 1965:

On August 27, 1963, a detective of the District Attorney's office of Delaware County entered and searched the premises 316 West Ninth Street, Chester, Pennsylvania, and arrested Joseph Ametrane, the appellant. The detective, John MacCrory, had filed complaints for warrants authorizing a search of the premises and Ametrane, and for a body or arrest warrant. The warrants were issued by a justice of the peace and were in MacCrory's possession when the searches and the arrest were made.

Ametrane's application and petition to suppress evidence, which was obtained as a result of the search, were dismissed. He was convicted on two counts on indictment No. 110, one setting up a gambling establishment (18 PS §4605) and one for aiding and assisting others to gamble (18 PS §4612). On indictment No. 111 he was convicted of bookmaking (18 PS §4607).

Motions in arrest of judgment and for a new trial were dismissed and Ametrane was sentenced on indictment No. 110 to serve three months in prison and to pay a fine of $300.00. Sentence was suspended on indictment No. 111.

In these appeals Ametrane raises four questions: (1) the sufficiency of the warrants, (2) the legality of the search and seizures, (3) the admissibility into evi-

dence of the prosecution question, "Is the defendant a bookie?" and the answer thereto by an expert witness, and (4) the sufficiency of the evidence to support the convictions.

## I.

Appellant argues that the complaint for the arrest warrant was insufficient and that his motion to suppress evidence obtained at the time of the arrest and incident to it should have been granted. The petition to suppress evidence attacks the validity of the search warrants, but not the arrest warrant. Assuming all three warrants were under attack at the hearing on defendant's motion, we are of the opinion that the issues raised were properly decided by the court below. Adequate probable cause for the issuance of the warrants was shown since the detective based his request for warrants on "information received from persons of reliable and good reputation" and personal knowledge and belief that the offenses were being committed obtained by investigation and surveillance. When the complaints were sworn and when the arrest was made the facts and circumstances within the detective's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing the defendant had committed or was committing an offense: *Brinegar v. United States,* 338 U.S. 160, 69 S. Ct. 1302, 93 L. ed. 1879 (1949); *Beck v. Ohio,* 379 U.S. 89, 85 S. Ct. 223, 13 L. ed. 2d 142 (1964).

The complaints for search warrants for the premises and the person of Joseph Ametrane presented the issuing magistrate the grounds on which affiant, John MacCrory, formed his belief that illegal acts had been and were being committed by Ametrane at the designated premises: "Complaints and information received from persons of reliable and good reputation, which

your affiant has reason to believe and does believe to be true and upon which he has relied in making this affidavit that accused takes horse bets over the telephone and from other persons at the above address all day.

"Personal knowledge, that County Detectives were assigned to investigate the original complaint; that the undisclosed agent reported the placing of horse bets and that your affiant has personally observed this location for some time and from their reports and my personal knowledge and experience in such activities the original complaint has been corroborated."

The transcript of the issuing justice of the peace contains the following passage: ". . . John MacCrory, who being duly sworn according to law deposes and says upon information received from investigation which he believes to be true and expects to be able to prove, upon personal knowledge that Joseph Ametrane on the 27th day of August, A.D. 1963 and within the past two years in the City of Chester, County of Delaware, Commonwealth of Pennsylvania, did engage in Bookmaking, Establishing a Gambling Place, see attached copies of information, contrary to the form of the Act of Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania." This is an adequate recital of an offense. The information used to institute criminal proceedings, as a basis for the warrant, need not be set forth with the particularity of an indictment; it is enough if the information states a criminal offense committed by defendant, its general nature, and its time and place: *Com. ex rel. Garland v. Ashe*, 344 Pa. 407, 409, 26 A. 2d 190, 191 (1942).

The danger in an inadequate information is that the magistrate issuing a warrant will do so without making a detached and independent appraisal on the issue of probable cause. Where, as here, the record

clearly shows the facts and considerations on which the decision to issue the warrants rests, and such facts and considerations are adequate to support the magistrate's independent determination of probable cause, and an offense is charged, we will uphold the validity of the warrants.

The Supreme Court of the United States recently said: "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See Aguilar v. Texas, supra. [378 U.S. 108] Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, (1) where these circumstances are detailed, (2) where reason for crediting the source of the information is given, and (3) when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of

probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca,* 380 U.S. 102, 85 S. Ct. 741, 13 L. ed. 2d 684 (1965). It is our opinion that the record adequately supports the warrants in the present case, and that the warrants were valid.

In this appeal the fact that the complaint failed to state a date on which the alleged crime was committed is offered as a fatal defect. Appellant contends that a defect in the complaint renders the arrest, search, indictment, trial, and sentence of the party named in the complaint void and without legal effect. The indictments supply the defect, if any, in the complaints. *Com. v. Bruno,* 203 Pa. Superior Ct. 541, 201 A. 2d 434.

## II.

The validity of a search made pursuant to a validly issued warrant turns on its reasonableness. The standard to be applied is that of the 4th and 14th Amendments to the United States Constitution. The various states may have their own rules of procedure so long as the net result remains within the federal constitutional standards. *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. ed. 2d 726 (1963).

With the authority of a warrant, law enforcement officers have a right to enter and search the premises described in the warrant.

Testimony in the case before us establishes that the police officer, armed with search warrants, started to pry open the door to defendant's apartment. John MacCrory, the detective, upon whose complaint the warrants were issued, testified that the detectives knocked on the door to defendant's apartment before using the crowbar. This was corroborated by James

C. Stewart, another detective who assisted MacCrory on the 27th of August.

The opinion of the court below recites: "The testimony shows that County Detectives had the defendant under surveillance for a period of time, had reason to believe that bookmaking was being carried on by the defendant in his apartment, went to his apartment on August 27, 1963 and, from the rear of the apartment, saw the defendant watching them from his second floor window. The detectives ran to the door of the apartment, rang the bell and were about ready to apply a crowbar to force open the door, when defendant opened the door, the detectives entered, read the warrants and searched the premises."

Under the circumstances of this case, the court below was justified in finding that there was some sort of announcement, whether by ringing a bell or knocking and that there was no breaking since defendant opened the door and admitted the law enforcement officers. It is not clear that Pennsylvania has a rule of announcement at all. See *Com. v. Manduchi*, 203 Pa. Superior Ct. 373, 198 A. 2d 613; but see *United States ex rel. Manduchi v. Tracy*, 233 F. Supp. 423 (Eastern District Pa., 1964). Even if the court believed there was no announcement here, and that such is required in Pennsylvania, the evidence that defendant saw and recognized the law officers, coupled with the circumstance of his opening the door to admit them, satisfies constitutional standards. See *Com. v. Wright*, 411 Pa. 81, 190 A. 2d 709; *Com. v. Waughtel*, 204 Pa. Superior Ct. 40, 201 A. 2d 217.

### III.

The appellant contends that the court erred in permitting a county detective to testify as an expert and express his opinion that the defendant was a bookie.

The admissibility of expert testimony is within the discretion of the trial judge. On appeal the issue is whether or not that discretion was abused. The fact that expert opinion is referable to the ultimate issue to be decided by the jury does not bar it if otherwise admissible: *Com. v. Nasuti,* 180 Pa. Superior Ct. 279, 119 A. 2d 642. The qualifications of Detective Mac-Crory were not, and are not, challenged. He had several years of experience investigating gambling activities and was admirably suited to interpret the evidence and circumstances involved in this case. No undue emphasis was placed on MacCrory's testimony. The question was ultimately left to the jury. We find no abuse of discretion in this case.

## IV.

The last argument advanced by appellant is that all the evidence, even if believed, is insufficient to support the conviction.

There is sufficient evidence to support a conviction (on indictment No. 111) for violation of §607 of the Act of June 24, 1939, 18 PS §4607. The evidence of the racing information (an Armstrong sheet with current annotations of results in races just completed which was found behind the refrigerator), coupled with the numerous phone calls received by the officers where the callers asked for "Joe" (defendant's first name) and either attempted to place bets or asked the results of races, is sufficient to support the conviction for bookmaking. Evidence concerning phone calls received by the police during the raid is admissible to establish the corpus delicti: *Com. v. McDade,* 197 Pa. Superior Ct. 522, 180 A. 2d 86. This is so even if the calls received on defendant's premises do not directly connect the defendant with the betting: *Com. v. Mattero,* 183 Pa. Superior Ct. 548, 132 A. 2d 905.

Under indictment No. 110, defendant was found guilty of violating §§605 and 612 of the Act of June 24, 1939 (18 PS §§4605, 4612). The §605 charge was setting up and establishing "a certain game or device of address, or hazard, called Bookmaking at and upon which money or other valuable thing was then and there unlawfully played for, staked or betted upon. . . ." *Com. v. Cohen*, 169 Pa. Superior Ct. 84, 82 A. 2d 325, cited by appellant, does not stand for the proposition that a "device" must be involved in order for a jury to find a violation of §605. That case merely determined that the punchboards sold by the defendant were such devices as the statute proscribed. The statutory language, ". . . any game *or* device. . . ." (emphasis supplied), is clear. Where as here, a place is used as a bookmaking establishment a jury may properly find a violation of §605.

Section 612 provides that one who ". . . engages in gambling for a livelihood, or aids or assists others to do so . . . is guilty of nuisance." Again, no device such as a slot machine or roulette wheel is required to find that proscribed activity took place.

We hold that the jury could have found these violations beyond a reasonable doubt from the evidence presented.

Judgment of sentence affirmed. The defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.