# Commonwealth v. Palladino, Appellant.

Argued December 13, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Herbert K. Fisher,* with him *Bloom, Ochs & Fisher,* for appellant.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, *Paul R. Sand,* First Assistant District Attorney, and *Jacques H. Fox,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, February 15, 1967:
Judgment of sentence is affirmed and the defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.

———

DISSENTING OPINION BY HOFFMAN, J.:
I dissent.
On October 25, 1965, State Police Officer McKenna applied for a warrant from a Justice of the Peace to search for "gambling devices and other paraphernalia" in appellant Palladino's apartment. In support of his application the officer submitted an affidavit reciting

that: ". . . James PALLADINO has been accepting horse and number bets over telephone numbers, LE 4-7447 and 521-2714. Information is based on information supplied by an informant who this officers [sic] knows to be relible [sic] and has furnished information in the past. Also on surveillance of this officer." The search warrant was issued, and certain incriminating evidence was discovered on appellant's premises.

Subsequently, in the Court of Quarter Sessions of Delaware County, Palladino was tried and convicted of bookmaking and maintaining a gambling establishment. He attacked the validity of the warrant in a timely motion to suppress the evidence resulting from the search. After hearing, the lower court denied the motion.

In my view, the affidavit in support of the warrant was insufficient, and the subsequent search was therefore constitutionally defective.

Although the affidavit purports to rely, at least in part, on personal "surveillance," it does not show what, if any, transactions the officer personally observed. Absent an unlawful wiretap, "surveillance" clearly could not have disclosed that Palladino was accepting bets over the telephone. In fact, the officer's personal observations were of no value whatever, as his later testimony revealed.

"Q. May [we] backtrack for just a moment? You say that the corporal and yourself after an investigation; will you tell us what your investigation consisted of?

"A. We observed this man [Palladino] entering the apartment in Ridley Township [Palladino's residence] at approximately 11:00 o'clock in the morning.

"Q. Observed him entering at approximately 11:00 a.m.?

"A. Yes sir.

"Q. On how many occasions did you make this observation, if you remember, sergeant?

"A. Just on one occasion; one occasion to the best of my knowledge.

"Q. Did your investigation go further at this time?

"A. Yes sir.

"Q. And would you tell us what that consisted of?

"A. Well, we—

"Q. I think I know, and I better withdraw that question."

We are therefore confronted with an affidavit based wholly on hearsay information. In *Aguilar v. Texas,* 378 U.S. 108, 114 (1964), the Supreme Court cautioned against rubber-stamp approval in such cases. "Although an affidavit . . . need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [materials] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable'."

At the outset, it is clear that the affidavit before us rests only on a bare assertion of the informant's reliability. It does not state how often he furnished information in the past, or under what circumstances, or whether that information resulted in any arrests or convictions. Indeed, it does not even allege that the intelligence previously supplied was found to be correct. In short, an impartial magistrate, relying on this affidavit, simply could not make an independent determination regarding the informant's credibility.

The affidavit is critically flawed, however, in another respect. It nowhere indicates that the anonymous informant's information is itself based on personal observation. In *Aguilar v. Texas,* supra, the Court attached great weight to such an omission. "The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the

matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that [the materials were] in petitioner's possession." Id. at 113.

The Court went on to state that approval of such an affidavit would allow easy circumvention of the rule that probable cause may not be founded on mere conjecture. "A police officer who arrived at the 'suspicion', 'belief' or 'mere conclusion' that [the materials] were in someone's possession could not obtain a warrant. But he could convey this conclusion to another police officer, who could then secure the warrant by swearing that he had 'received reliable information from a credible person' that [the materials] were in someone's possession." Id. at 114 n. For all that we can determine, that is precisely what happened here. At the hearing on appellant's motion to suppress, Officer McKenna, the affiant, confided that the immediate source of his information was a fellow officer, who in turn is supposed to have dealt with the unnamed informant.

The probability that this affidavit rests on multiple hearsay, rooted in conjecture, is too great to be ignored. In *U. S. v. Ventresca,* 380 U.S. 102 (1965), the Supreme Court intimated that an affidavit based on multiple hearsay, in the absence of overwhelming corroboration, would itself vitiate a search warrant. However, the Court ultimately found that the affidavit before it was based, in significant part, on the police officers' own observations.

No one would dispute that hearsay evidence is only as credible as its source and only as strong as its corroboration. Where, as here, the source is in doubt and the affiant's corroboration is unclear, the affidavit is plainly insufficient.

If any doubt remains as to the proper disposition of this case, it is dispelled by *Riggan v. Virginia,* 384 U.S. 152 (1966). There, as here, the affidavit recited that it rested on "personal observation of the premises and information from sources believed by the police department to be reliable." *Riggan v. Commonwealth,* 206 Va. 499, 144 S.E. 2d 298, 299 (1965). The Supreme Court reversed summarily, relying on *Aguilar v. Texas,* supra. See also *Gillespie v. U. S.,* 368 F. 2d 1 (8th Cir. 1966).

It is true that in *Commonwealth v. Ametrane,* 205 Pa. Superior Ct. 567, 210 A. 2d 902, aff'd., 422 Pa. 83, 221 A. 2d 296 (1966), this Court approved an affidavit somewhat similar to the one now before us. There, however, the affiant recited ". . . that County Detectives were assigned to investigate the original complaint; that the undisclosed agent reported the placing of horse bets. . . ." The affidavit in *Ametrane* must be read as resting on personal observation and corroboration by a police detective, and the case is therefore distinguishable.

I agree with the Commonwealth that appellate courts should read these affidavits in a common-sense and nontechnical fashion. Moreover, I am fully aware of the strong policy considerations favoring warrants and the general rule that affidavits should be upheld in doubtful cases. See *U. S. v. Ventresca,* supra. But this is not a doubtful case. Furthermore, there is a stronger countervailing policy in operation here. In the words of Justice JACKSON, "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting

out crime." *Johnson v. U. S.,* 333 U.S. 10, 13-14 (1948). The affidavit in this case is wholly inadequate to permit such an informed and impartial judgment.

Since the affidavit was insufficient to support the issuance of a warrant, the search of appellant's apartment was unlawful. Consequently, the evidence which was seized should have been suppressed.

I would reverse and remand for a new trial.

SPAULDING, J., joins in this dissent.