## Commonwealth v. Dugan

*Michael M. Baylson*, Assistant District Attorney, for Commonwealth.

*Richard A. Gallagher*, for defendant.

SPAETH, J., March 3, 1967.—On November 29, 1966, this court denied defendant's motion to suppress evidence seized under a search warrant. Defendant petitioned the court to reconsider its decision. The district attorney did not object to the petition. The petition was allowed, and on December 8th further testimony was taken and reargument was heard.

The question is whether the magistrate, when he signed the warrant, was informed of sufficient facts to enable him to make an independent judgment that there was probable cause to issue the warrant.

The facts that the magistrate was informed of were stated in the warrant as follows:

"From information received from reliable source who works with above defendant. This informant states that Dugan is engaged in setting and maintaining illegal lottery at Crown, Cork and Seal Co., 9300 Ashton. Also states that defendant uses his auto to transport the above work. After surveillance of above location, I feel the above defendant is engaged in Illegal Lottery".

After reconsideration, it is apparent that this statement was not sufficient.

In Aguilar v. Texas, 378 U. S. 108, 114-15 (1964), the court said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U. S. 257, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U. S. 528, was 'credible' or his information 'reliable' ".

The warrant here did state that "information" was ". . . received from reliable source who works with above defendant"; but it did not state what the information was, nor why the source was considered reliable. The warrant also stated that the officer made a "surveillance"; but it did not state when the surveillance was made, what it consisted of, or what was ob-

served as a result of it. The statement in the warrant that ". . . Dugan is engaged in setting and maintaining illegal lottery at Crown, Cork and Seal Co. . . ." was a mere conclusion, and the same is so of the statements that ". . . defendant uses his auto to transport the above work", and that ". . . I feel the above defendant is engaged in Illegal Lottery."

Thus, the only facts that the magistrate had were that defendant and the officer's informant worked at Crown, Cork and Seal; that some sort of surveillance had been made, and, evidently, that defendant had been seen using his automobile. No matter how these facts are regarded (cf. United States v. Ventresca, 380 U. S. 102, 109, (1965), and Commonwealth v. Ametrane, 205 Pa. Superior Ct. 567, 572-73 (1965), they do not state enough for a "neutral and detached magistrate" to form a "disinterested determination" that there was probable cause for him to issue the warrant: Aguilar v. Texas, supra; Commonwealth v. Alvarez, 208 Pa. Superior Ct. 371 (1966); Commonwealth v. Smyser, 205 Pa. Superior Ct. 599 (1965). Accordingly, the warrant was improperly issued and the evidence seized under it will be suppressed.

This conclusion is not affected by the fact that, in addition to the warrant, the record includes testimony by the officers who executed the warrant and by defendant.

At the first hearing, the officers described the "surveillance". They said that they had seen defendant take something to a car, but what it was they did not see. They did not tell the magistrate anything about the surveillance; they only presented him with the written statement in the warrant, as quoted above.

At the second hearing, defendant testified as follows:

On February 21, 1966, two detectives came to defendant's place of employment. They went to the personnel manager, exhibited a warrant and said that they

wanted to search defendant. They took defendant to the men's locker room, made him take off his shoes and shirt and searched him. Apparently they found nothing, for they left. On March 5th, two detectives with a warrant stopped defendant in the parking lot (apparently the lot of defendant's employer), made him empty his pockets and searched his car. They found nothing. On April 9th, defendant was again stopped on the parking lot by officers with a warrant. The officers searched defendant's car but found nothing. On August 15th, officers with a warrant searched defendant's home for two hours, including his bedroom and clothes. They found nothing.

In appraising this testimony, it must be remembered that the warrant may be judged only according to the sworn statements made to the magistrate when he was asked to issue it: Commonwealth v. Crawley, 209 Pa. Superior Ct. 70 (1966). Here, those statements were made as part of the warrant, on or about July 15, 1966, when the warrant was issued. The statements cannot be strengthened or weakened by later testimony interpreting them (as, for example, explaining what "surveillance" meant) or describing events that occurred before or after they were made (such as the searches of February, March and April, which were before the warrant, or the search of August, which was after it). The issue is whether the magistrate, when he signed the warrant, was informed of sufficient facts to enable him to make an independent judgment that there was probable cause to issue the warrant. Since the magistrate could not be informed of the August search, which had not occurred, and since he was not informed of the earlier searches or of the nature of the surveillance, the officers' and defendant's testimony was irrelevant.

Nevertheless, it may be instructive to comment upon the testimony, for it illustrates an aspect of the law

regarding search warrants that may easily be overlooked.

In Aguilar v. Texas, supra, 378 U. S. at 111, the court said:

" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that these inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, supra, at 333 U. S. at 13-14.

"Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police".

Usually this passage is quoted with reference either to the magistrate or to the court. It is also pertinent, however, with reference to the police officer, and consideration will show that the fourth amendment in protecting the citizen helps to ensure a more skilled and professional police force.

It is easy to state a conclusion that has a spurious appearance of validity. Here, for example, the statements that "information" was ". . . received from reliable source who works with above defendant", that defendant ". . . uses his auto to transport the above [lottery]", and that "After surveillance of above location, I feel the above defendant is engaged in Illegal Lottery", sound rather persuasive. Evidently, however, they meant little or nothing. At least, the "surveillance" showed nothing. And if (what does not appear but may have been so) the warrant here and the warrants of February, March and April were all requested because of information from the same source, the

source does not seem to have been particularly "reliable".

This is not to say that the police are not entitled to make mistakes; and it may be granted that if they do make a mistake, and find nothing, they may, nevertheless, have had reasonable cause to obtain a warrant. However, once a police officer appreciates and accepts the fact that a magistrate cannot "serve merely as a rubber stamp for the police", only beneficial results will follow. The officer will not be content to write that "I feel the above defendant is engaged in Illegal Lottery". Instead, he will undertake to state the facts that cause him to have the feeling; and when he does, either he will realize that he needs more facts, and will delay asking for a warrant until he has them, or he will present to the magistrate a warrant so fully worded that it will probably withstand attack. Thus, the honest man will be saved the embarrassment of an unreasonable search, and the police officer will be saved the embarrassment of seeing a guilty man freed because evidence was suppressed that would have been admitted had the warrant been properly prepared.

Accordingly, the court issues the following

ORDER

And now, March 3, 1967, the warrant is declared invalid, and the evidence confiscated from defendant on or about July 15, 1966, is suppressed and may not be used against defendant for any purpose.