Augustine Rivera TISNADO,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee,

John Moran, Director, Arizona Department of Corrections, and Harold Cardwell, Superintendent, Arizona State Prison, Respondents-Appellees.

No. 75–1066.

United States Court of Appeals,
Ninth Circuit.

Nov. 3, 1976.

As Amended on Denial of Rehearing
Dec. 22, 1976.

B. Michael Dann (argued), of Treon, Warnicke & Dann, Phoenix, Ariz., for petitioner-appellant.

Michael A. Johns, Asst. U. S. Atty. (argued), Phoenix, Ariz., for respondent-appellee.

Before WRIGHT and CHOY, Circuit Judges, and ORRICK,* District Judge.

CHOY, Circuit Judge:

In 1967, Tisnado entered guilty pleas to two counts of conspiracy, 18 U.S.C. § 371, arising out of two bank robberies. He was sentenced to two consecutive five-year terms, the federal sentences to commence at the termination of state sentences then in effect.

In 1974, Tisnado brought a 28 U.S.C. § 2255 challenge against the federal sentences, alleging that the two prior state convictions (one in 1967 and the other in 1954) were illegal, that it was therefore improper for the sentencing court to have considered them, and that such improper consideration had resulted in enhanced federal sentences. *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). At the suggestion of the district court, Tisnado also petitioned under 28 U.S.C. § 2254 for habeas corpus relief from the allegedly invalid state priors.

The district court denied the § 2254 petitions on their merits, and, after finding that the § 371 federal sentences would have been the same even if the prior state convictions were invalid, denied the § 2255 petitions as well.

Tisnado appeals. We affirm in part and vacate in part.

## I. The 1967 Conviction

Tisnado was convicted and sentenced in state court on July 11, 1967 for illegal possession of marijuana and heroin. The narcotics introduced at the trial had been seized in a search of his residence conducted pursuant to a state search warrant. He now challenges the constitutional validity of the search and seizure on three grounds. First, Tisnado contends that because the affidavit alleged merely that the informant "has proven reliable in the past," *compare Aguilar v. Texas,* 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Riggan v. Vir-*

*ginia,* 384 U.S. 152, 86 S.Ct. 1378, 16 L.Ed.2d 431 (1966), *rev'g* 206 Va. 499, 144 S.E.2d 298, 299 n.1 (1963); *Clemas v. United States,* 382 F.2d 403, 406 & n.3 (8th Cir. 1967), it failed to provide underlying facts from which the issuing magistrate could independently conclude that the informant "was 'credible' or his information 'reliable'." *Aguilar v. Texas,* 378 U.S. at 114, 84 S.Ct. at 1514; *United States v. Mulligan,* 488 F.2d 732, 735 (9th Cir. 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974); *United States v. Shipstead,* 433 F.2d 368, 372 (9th Cir. 1970).

Next, he challenges the sufficiency of the affidavit on the ground that it failed to provide underlying facts to support the affiant's statement that the informant "is familiar with narcotics." Tisnado concedes that an allegation of the informant's personal observation of contraband sufficiently establishes that the informant was "relying on something more substantial than a casual rumor." *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969); *United States v. Larkin,* 510 F.2d 13, 15 (9th Cir. 1974). Nevertheless, he argues that *Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and *Thomas v. Superior Court,* 22 Cal. App.3d 972, 99 Cal.Rptr. 647, 650 (1972), require that the affiant provide facts from which the magistrate may himself determine that the informant was "qualified" to identify correctly that which he claims to have observed.

Lastly, Tisnado attacks the five-day delay in execution of the warrant as unreasonable. Officers kept the Tisnado residence under observation during that time and made the search only when he returned to it. The heroin was found on Tisnado's person. Citing *Williams v. United States,* 418 F.2d 159 (9th Cir. 1969), he maintains that the delay was contrived solely to permit an otherwise unlawful body search.

These contentions were rejected at a suppression hearing which preceded Tisnado's

---

* The Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

trial. After his conviction, Tisnado took a direct appeal, and the Arizona Supreme Court affirmed. *Arizona v. Tisnado*, 105 Ariz. 23, 458 P.2d 957 (1969). A reading of the opinion reveals that the Arizona Supreme Court did not then rule on Tisnado's fourth amendment claims. However, that court did reach and decide the issues in a subsequent state habeas corpus proceeding. Finding no unlawful search and seizure, the court denied Tisnado's petition in an unreported opinion, No. H–485–2, dated July 12, 1972.

## A. The § 2254 Petition

We decline to reexamine the merits of Tisnado's fourth amendment claims and thus affirm the denial of § 2254 habeas corpus relief.

■ Tisnado is currently still on parole for the 1967 state conviction. Such a restraint satisfies the custody requirement of 28 U.S.C. §§ 2241(c)(3) & 2254(a). There is, therefore, jurisdiction to entertain Tisnado's § 2254 petition. *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

However, in *Stone v. Powell*, — U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d —— (1976), the Supreme Court held that

where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at ——, 96 S.Ct. at 3052 (footnotes omitted). And, as this circuit has decided that *Stone v. Powell* is to be given fully

retroactive effect, *Bracco v. Reed*, 540 F.2d 1019 (9th Cir. 1976), it controls the disposition of Tisnado's petition.

■ There has been no contention by Tisnado that he was in any way denied "an opportunity for full and fair litigation of [his] Fourth Amendment claim[s]" by the state of Arizona. He did litigate these claims at the time of his trial. And, although it does not appear from the record that he in fact aired them on direct appeal, there is no showing that he was denied the "opportunity" to do so. In addition, when his collateral state challenge reached the Arizona Supreme Court in 1972, his search and seizure contentions were rejected after being fully briefed and argued.

Since petitioner's state opportunities to litigate his claims were "full",[1] and there is no indication that the Arizona procedures were not "fair", we decline to reach the merits of any of petitioner's fourth amendment contentions.[2]

The denial of § 2254 habeas corpus relief as to the 1967 conviction is affirmed.[3]

## B. The § 2255 Petition

We must decide here whether the principle established by the Supreme Court in *Stone v. Powell* precludes a federal court from reexamining the validity of a prior state conviction which is challenged on fourth amendment grounds in a *Tucker*-type § 2255 setting. We hold that it does and therefore affirm also the denial of *Tucker* relief from the 1967 state conviction.

The holding of *Stone v. Powell* is premised on the belief that the principal

---

1. Indeed, a comparison of the facts of *Stone v. Powell*, see 428 U.S. at 531, 96 S.Ct. at 3069 (Brennan, J., dissenting), in which the claims of that petitioner had apparently been aired at only a single forum, confirms our opinion that Tisnado's opportunity to litigate his claims clearly was "full" within the intendment of the Court's holding.

2. Since, under *Stone v. Powell*, the issue of whether the state court correctly applied the law of search and seizure is apparently totally irrelevant as long as state procedures were

"fair", see 428 U.S. at 471–473, nn.2 & 3, 96 S.Ct. at 3040–3041; *id.* at 531, 96 S.Ct. at 3069 (Brennan, J., dissenting), we express no opinion on the merits of Tisnado's fourth amendment contentions.

3. The majority in *Stone v. Powell*, 428 U.S. at 494 n.37, 96 S.Ct. at 3037, is quite explicit in indicating that its holding does not affect the jurisdiction of the district court. Therefore, we affirm the denial of § 2254 relief rather than vacate the judgment of the district court for lack of jurisdiction.

function to be served by the fourth amendment exclusionary rule is its deterrent effect on illegal police conduct. *See* 428 U.S. at 487, 96 S.Ct. at 3048. The Supreme Court concluded that, on balance, the societal costs inherent in both excluding concededly probative evidence from the truthseeking process and allowing relitigation under § 2254 of a claim that had already been denied in state courts outweighed the added deterrent value arising from the concern of law enforcement officials that their conduct might eventually be criticized in collateral federal proceedings. Any impugning of the integrity of the federal judiciary which might result from its allowing a possibly meritorious constitutional claim to go unheard was thought by the majority to be of minimal concern. *See* 428 U.S. at 482–496, 96 S.Ct. at 3046–3052. Apparently feeling that identical considerations were present in the case of a § 2255 habeas corpus challenge to a federal conviction, the Court expressed its view that, to the extent that *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), rested on constitutional rather than supervisory grounds in sanctioning a fourth amendment collateral assault on a federal conviction, it also was to be rejected. 428 U.S. at 481 & n.16, 96 S.Ct. at 3045.

■ Thus, according to *Stone v. Powell*, a federal court may not grant either § 2254 or § 2255 habeas corpus relief on the basis that evidence obtained in an unconstitutional search or seizure was introduced, respectively, at a state or federal trial where the defendant was provided an opportunity to litigate fully and fairly his fourth amendment claim before petitioning the federal court for collateral relief.

A § 2255 *Tucker*-type petition does not, however, seek habeas corpus relief from an allegedly invalid conviction. Rather, it asks the federal court to reconsider a federal sentence on the ground that that sentence was enhanced through the sentencing court's consideration of an invalid prior—state or federal—conviction.

In *Tucker*, the Supreme Court held that where the petitioner came into federal court to challenge a federal sentence armed with a state court declaration that prior state convictions of which the federal sentencing judge had been aware were invalid under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the case was to be remanded for reconsideration of the federal sentence in light of the invalidity of the prior state convictions. The rationale for the holding was clear: The federal sentencing judge might very well have viewed the defendant differently if he were aware that the defendant, instead of having a record of prior state convictions, was an individual who had been unconstitutionally convicted and imprisoned in the past. *See* 404 U.S. at 448, 92 S.Ct. at 589.

The Supreme Court's *Tucker* holding has subsequently been expanded in two important respects. First, district courts now not only reconsider federal sentences under § 2255 where the *Tucker* petitioner has already secured an independent declaration of the invalidity of his prior conviction, but also entertain the initial collateral attack against the allegedly illegal prior. Since the validity for *Tucker* purposes of a prior state or federal conviction could probably be determined in an independent § 2254 or § 2255 federal habeas corpus proceeding anyway, it made sense to allow the proceedings to be consolidated and the validity of the prior conviction to be determined as one step in a *Tucker* challenge. Furthermore, the exhaustion of remedies requirement of § 2254(b) is not always carried over to § 2255 *Tucker*-type proceedings. *See, e. g., United States* ex rel. *Fletcher v. Walters*, 526 F.2d 359, 361–62 (3d Cir. 1975); *Crovedi v. United States*, 517 F.2d 541, 546 (7th Cir. 1975); *Mitchell v. United States*, 482 F.2d 289, 293 (5th Cir. 1973). *But see, e. g., Brown v. United States*, 483 F.2d 116, 118–19 (4th Cir. 1973); *Young v. United States*, 485 F.2d 292, 294 (8th Cir. 1973), *cert. denied*, 416 U.S. 971, 94 S.Ct. 1995, 40 L.Ed.2d 560 (1974). Thus, not only does a petitioner not always have to secure the invalidation of his prior conviction in the court in which it was rendered before mounting a § 2255 *Tucker*-type challenge, but he is also not

even required by some courts to exhaust available avenues in an attempt to do so.

Second, although *Tucker* itself involved prior convictions which had been declared invalid under the sixth amendment right to counsel, some subsequent cases have, without extensive discussion, expanded the reach of *Tucker* remedies to embrace other constitutional challenges to a prior conviction as well. *See, e. g., Jefferson v. United States*, 488 F.2d 391, 393 (5th Cir. 1974) (fifth amendment self-incrimination); *Taylor v. United States*, 472 F.2d 1178, 1179–80 (8th Cir. 1973) (same); *Martinez v. United States*, 464 F.2d 1289, 1290 (10th Cir. 1972) (invalid statutory presumption). Here, Tisnado quite naturally makes the following argument: Prior convictions which are invalid under the fourth amendment are also a species of constitutionally invalid convictions which result in unlawful imprisonment. And, since the Supreme Court rationalized *Tucker* primarily on the unadorned basis of unconstitutional conviction and incarceration, a showing that a prior state conviction of which the federal sentencing judge was aware is infirm on fourth amendment grounds likewise demands that the federal sentence be reconsidered in light of this new information. Nevertheless, petitioner is unable to cite a single case in which a court has recognized an extension of *Tucker* to claims under the fourth amendment.[4] For their part, however, appellees do not attempt to contest the validity of extending *Tucker* to fourth amendment challenges, apparently conceding the point as logically self-evident.

 We need not speculate here on whether we would have accepted the views of the parties had *Stone v. Powell* not come down. In our opinion, the holding and reasoning of the Supreme Court in that case now undercut any rationale for allowing the rehearing of fourth amendment claims as part of a *Tucker*-type challenge. We hold that, where the state has provided an opportunity for full and fair litigation of a fourth amendment claim, a federal prisoner may not relitigate in a § 2255 *Tucker* proceeding the validity of a prior state conviction on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his state trial.

We arrive at our decision for the following reasons: First, since a federal court in these circumstances may no longer reexamine under § 2254 the merits of a fourth amendment claim, any consideration of judicial efficiency to be derived from the consolidation of a habeas corpus proceedings with a § 2255 *Tucker* hearing is no longer present. We do not mean to suggest that a prior state conviction which a federal court may not reexamine or declare invalid is *ipso facto* not "invalid" for *Tucker* purposes. Rather, applying the same considerations of federal judicial economy and finality ex-

---

**4.** Petitioner does, however, appropriately offer *Beto v. Stacks*, 408 F.2d 313 (5th Cir. 1969), which held that a new trial was required where a conviction subsequently determined to be invalid under the fourth amendment was introduced at a one-stage Texas recidivist trial. In so holding, *Beto v. Stacks* extended *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), a case which differed only in that it involved a prior conviction which was invalid on sixth amendment right-to-counsel grounds. *See* 408 F.2d at 316–17. *Burgett* was later relied on heavily by the Supreme Court in *Tucker, see* 404 U.S. at 449, 92 S.Ct. at 589, and, for this reason, Tisnado urges us to extend *Tucker* just as *Beto v. Stacks* extended *Burgett.* We decline to do so here.

Some opinions do cite *Beto v. Stacks* broadly as a case involving an unconstitutional prior conviction, apparently placing no importance on the fact that the prior was invalid on fourth amendment grounds. *See, e. g., United States v. Cole*, 463 F.2d 163, 170 (2d Cir.), *cert. denied*, 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972); *Gerberding v. Swenson*, 435 F.2d 368, 370 (8th Cir. 1970). Other opinions, however, forcefully distinguish search and seizure claims from right-to-counsel contentions in disapproving of *Beto v. Stacks. See, e. g., United States v. Penta*, 475 F.2d 92, 94–95 (1st Cir. 1973). *See also Douglas v. Warden*, 399 F.Supp. 1, 6–9 (D.Md.1975); *United States v. Graves*, 394 F.Supp. 429, 432–33 (W.D.Penn.1975). We express no opinion on the viability of *Beto v. Stacks* when reexamined in light of the Court's reasoning in *Stone v. Powell.* The introduction of a prior conviction at a one-stage recidivist trial where the determination of guilt as well as the issue of enhancement may be influenced is quite a different matter from that facing us in the *Tucker* setting.

pressed by the Court in *Stone v. Powell*, 428 U.S. at 491 & n.31, 96 S.Ct. at 3050, we feel that the question of validity has already been sufficiently examined. Moreover, it would indeed be anomalous if a federal convict were to be refused a rehearing on the validity of a prior state conviction for purposes of § 2254 habeas corpus relief, which could very well result in his release from state custody, but be granted that same relitigation as a step in a § 2255 *Tucker*-type challenge, which at most might result in a reconsideration of his federal sentence.[5]

Second, *Stone v. Powell* now makes it clear that all constitutional claims do not rest on identical considerations for all purposes. It is true that the primary rationale for *Tucker*—that the sentencing court might have viewed the defendant differently if it had known that prior convictions and incarcerations had been illegal—may seem to have little relation to the additional-deterrent analysis of *Stone v. Powell*. We conclude, however, that the Court's reasoning in that case which distinguishes fourth amendment from other constitutional claims on the basis of their effect on the integrity of the truthfinding process, *see* 428 U.S. at 489, 96 S.Ct. at 3049, is equally applicable in the *Tucker* setting. Accordingly, it now appears that it may be an unwarranted extension of *Tucker's* holding—which concerned a prior conviction that had been declared invalid due to a denial of the sixth amendment right to counsel—to suggest that prior convictions which are invalidated on fourth amendment grounds are also to be excluded from the consideration of the sentencing court. On the contrary, it is highly probable that a sentencing judge would continue to place great weight on a prior conviction even after discovering that it is infirm on fourth amendment grounds. Such a constitution-

ally invalid conviction is nonetheless probative evidence that the defendant has engaged in prior criminal conduct, and it has been held to be constitutionally permissible for similar information to be considered by the court in some sentencing contexts. *See United States v. Vandemark*, 522 F.2d 1019, 1021–25 (9th Cir. 1975). *But compare United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971) *with Verdugo v. United States*, 402 F.2d 599 (9th Cir. 1968), *cert. denied*, 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971). *See also United States v. Haygood*, 502 F.2d 166, 171–72 & n.16 (7th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812 (1975); *United States v. Atkins*, 480 F.2d 1223, 1224 (9th Cir. 1973). Clearly, then, the Court's recognition of this conviction-conduct distinction casts considerable doubt upon the wisdom of extending *Tucker* relief to fourth amendment claims. This is especially true given the fact that the Supreme Court's *Tucker* pronouncement rested also on *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), a case which had held that consideration of materially untrue information in sentencing was error. *See* 404 U.S. at 447, 92 S.Ct. at 589, *citing* 334 U.S. at 741, 68 S.Ct. at 1252.

Finally, while *Tucker* was based to a substantial degree on the belief that "[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case," 404 U.S. at 449, 92 S.Ct. at 593, *quoting Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), *Stone v. Powell* makes it clear that the application of the exclusionary rule in each context is to be tested independently through the pragmatic analysis of balancing "competing policies," 428

---

5. Such an anomalous outcome would of course follow in the instant case were we not to read *Stone v. Powell* as barring Tisnado's *Tucker* attack. Surely, if judicial integrity does not compel a federal court to hear a habeas corpus petition based on a fourth amendment constitutional claim, *see* 428 U.S. at 482–488, 96 S.Ct. at

3046–3049, it does not stand in the way of a court's refraining from such a hearing in a § 2255 *Tucker* challenge either. Consistency of approach seems indeed to be of prime importance here. Without it, the potential for judicial embarrassment is obvious.

U.S. at 488, 96 S.Ct. at 3049. Applying the Court's balancing analysis and its emphasis on the deterrent rationale to the *Tucker* context, we believe that the proper outcome follows with comparative ease. We do not think that any added deterrent effect—which might result from the fear of state law enforcement officials that their actions which are directed toward a state conviction may be reviewed anew in a *Tucker*-type challenge to a subsequent federal sentence—outweighs the considerations of judicial economy, finality, consistency, and truthseeking in sentencing which lead us to our holding here. *Compare United States v. Vandemark,* 522 F.2d 1019, 1021–25 (9th Cir. 1975). If the inability to challenge a prior conviction in a *Tucker* proceeding on already-litigated fourth amendment grounds does indeed "erode" the principle of the exclusionary rule, it is an erosion which we believe is clearly compelled by the holding and reasoning of *Stone v. Powell.*[6]

■ In the case before us, Tisnado seeks to relitigate his fourth amendment claims challenging his 1967 state conviction. As we have already held in denying his § 2254 petition for habeas corpus relief from the same conviction, the state has provided Tisnado with a full and fair opportunity to air his contentions in its courts. For the reasons given above, we hold that Tisnado, not having arrived in federal court with an independent declaration that his 1967 state conviction is invalid, may not have his fourth amendment claims relitigated in a § 2255 *Tucker*-type challenge to his federal sentences.

The denial of *Tucker* relief is affirmed.

## II. The 1954 Conviction

Tisnado was tried in Arizona courts in 1954 for burglary. At his first trial, a mistrial was declared when the jury was unable to reach a verdict. He was subsequently retried and convicted. He now contends that he was unconstitutionally placed twice in jeopardy. This contention was rejected both by the Arizona Supreme Court in an unpublished memorandum, No. 1881–2 (November 15, 1973), and by the district court below, each court holding that Tisnado had consented to retrial by failing to object to the granting of a mistrial.

### A. The § 2254 Petition

■ As it does not appear that the custody requirement of 28 U.S.C. §§ 2241(c)(3) & 2254(a) was met in 1974 as to the 1954 state conviction which carried a maximum 15-year term, the denial of that habeas corpus petition is vacated for lack of jurisdiction. *See Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Huante v. Craven,* 500 F.2d 1004 (9th Cir. 1974).

### B. The § 2255 Petition

Although it was not necessary to confront the issue of whether *Stone v. Powell* extends to preclude double jeopardy as well as fourth amendment claims in dealing with Tisnado's § 2254 petition because it had to be vacated for lack of jurisdiction, the question now presents itself in relation to the § 2255 *Tucker*-type petition.

No case which extends the *Tucker* remedy to priors which are challenged on double

---

**6.** Our holding that the validity of a prior state conviction may not be relitigated on a fourth amendment ground in a *Tucker* context is a narrow one. There is no need for us to decide today whether a petitioner who has succeeded in having his fourth amendment claim vindicated in state court and his state conviction declared invalid may then proceed to litigate in a § 2255 *Tucker*-type proceeding the questions of whether the federal sentencing court considered that prior state conviction and whether such consideration resulted in an enhanced federal sentence. Likewise, we express no view on whether the Court's opinion in *Stone v. Powell* casts doubt on whether a federal court

may entertain a collateral challenge based on constitutional claims other than the fourth amendment ones specifically discussed there. Finally, since the case before us involves only the allegation that a prior *state* conviction is invalid, we have no need to comment on the strength of the Court's dictum concerning the relitigation of fourth amendment claims which arise from a federal conviction in a § 2255 habeas corpus context, which we would have to do if we were to reach the issue of whether the Court's dictum may be expanded to eliminate also § 2255 *Tucker*-type claims challenging an invalid *federal* prior.

jeopardy grounds has been brought to our attention. Once again, however, appellees do not dispute the logic of so extending *Tucker*. Under these circumstances, the question is whether a prior conviction may be challenged on double jeopardy grounds under *Tucker* when that case is read in light of the reasoning of *Stone v. Powell*, see 428 U.S. at 515, 96 S.Ct. at 3062 (Brennan, J., dissenting). One panel of this court apparently feels that *Stone v. Powell* leaves the law on collateral attacks based on double jeopardy grounds undisturbed. *See Corley v. Cardwell*, 544 F.2d 349, 351 (9th Cir. 1976). We find it unnecessary, however, to discuss this question,[7] for we hold that Tisnado's claim of being twice placed in jeopardy is without merit and his 1954 conviction is therefore valid.[8]

In determining the petitions before them, both the Supreme Court of Arizona in 1973 and the federal district court below held that Tisnado had waived his right to challenge his retrial on double jeopardy grounds because he had consented to retrial by failing to object to the granting of a mistrial. However, since the federal double jeopardy clause was not applied to the states until 1969, *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), but was applied retroactively, *Ashe v. Swenson*, 397 U.S. 436, 450, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), it is difficult for us to see how the federal right could have been knowingly waived in 1954 by a failure to assert it. *See Galloway v. Beto*, 421 F.2d 284, 288 n.4 (5th Cir.), *cert. denied*, 400 U.S. 912, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

There is, nevertheless, one argument which apparently was not dealt with by the *Galloway* court, but which is pressed here by the State of Arizona. The contention is that, since there was a *state* constitutional guarantee against double jeopardy in existence in 1954 of which Tisnado should have been aware, Ariz.Const. art. 2, § 10, in failing to object to the granting of a mistrial he knowingly waived *all* double jeopardy objections. It may well be that petitioner did knowingly waive his state protection; and, if the Arizona Supreme Court so held, we will of course defer to its determination. But, in our view, it does not necessarily follow that petitioner's waiver of a known state right in 1954 can be said to constitute a knowing waiver of a similar, but then as yet unknown, federal right. *See generally Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ We need not, however, rule on the waiver argument. Even assuming *arguendo* that Tisnado cannot be said to have waived his federal right to protest his retrial on double jeopardy grounds, we agree with the state that his 1954 conviction was valid for we reject his double jeopardy claim on its merits.

■ The decision to grant a mistrial lies in the broad discretion of the trial judge, *Illinois v. Somerville*, 410 U.S. 458, 461–62, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), and the burden is on the defendant to show an abuse of that discretion, *Oelke v. United States*, 389 F.2d 668, 671 (9th Cir. 1967), *cert. denied sub nom. Graves v. United States*, 390 U.S. 1029, 88 S.Ct. 1420, 20 L.Ed.2d 286 (1968). *Corley v. Cardwell*, 544

---

7. Since the holding of *Stone v. Powell* is non-jurisdictional, *see* footnote 3 *ante*, we feel no hesitancy in thus bypassing this issue.

8. In disposing of the § 2255 petitions, the district court apparently found it unnecessary to conduct a statutory hearing by which to determine whether each prior state conviction was in fact valid, holding instead that, regardless of the outcome of such an inquiry, the record indicated that the federal sentences would have been the same. Without intending to intimate any view at this time concerning the propriety

of the approach adopted by the district court, *see Lipscomb v. Clark*, 468 F.2d 1321, 1323 (5th Cir. 1972), we have chosen to rest our affirmance on the validity of the 1954 state conviction, a ground which was also fully briefed and argued here by the parties. *See Paskaly v. Seale*, 506 F.2d 1209, 1211 n.4 (9th Cir. 1974); *Sanchez v. Trans World Airlines, Inc.*, 499 F.2d 1107, 1108 (10th Cir. 1974).

F.2d 349, 351 (9th Cir. 1976). Tisnado nevertheless argues that, since the record of the proceedings surrounding the declaration of mistrial is incomplete, it would be unfair to make him bear the burden on this issue. However, under applicable state law, the responsibility for the inadequacy of the record must rest with petitioner. *Arizona v. Moore*, 108 Ariz. 532, 502 P.2d 1351, 1353 (1972).

■■■■ Moreover, "[w]here a great lapse of time occurs before a 2255 hearing, a court may rely on testimony as to the customary practices in the court and the presumption of regularity." *Tibbs v. United States*, 459 F.2d 292, 293 (9th Cir. 1972). Therefore, we may assume that the procedures for discharge of jurors upon deadlock then in effect in state court, Ariz.Code of 1939 § 44–1930(c), were followed. We find those procedures to be consistent with minimum federal standards. Given the foregoing, we cannot say that Tisnado has succeeded in demonstrating that the trial court abused its discretion in granting a mistrial.[9]

The denial of *Tucker* relief from the 1954 state convictions is affirmed.

Affirmed in part and Vacated in part.

---

**9.** Even assuming *arguendo* that the statutory procedures were not followed, we would nevertheless still affirm. Tisnado did not object to the actual procedures used by the trial court in dismissing the jury. The failure to follow those statutory procedures does not rise to the level of "plain error", *United States v. Jeffery*, 473 F.2d 268, 270–71 (9th Cir.), *cert. denied*, 414 U.S. 818, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973); *Herzog v. United States*, 235 F.2d 664, 666–67 (9th Cir.) (en banc), *cert. denied*, 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956), in relation to the "scrupulous exercise of discretion" test of *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).